# BARTHOLOMEW WADDINGTON, Jr., v. JOHN LANE et al., Appellants.

### Division Two, March 19, 1907.

1. **SPECIFIC PERFORMANCE: Submission of Issues to Jury: No Answer.** Whether or not the interrogations submitted to the jury, in a suit by the vendee for specific performance of a contract for the purchase of the land, each embrace a single issue of fact, is of no consequence, if they embrace issues as to the acts of the vendor who failed to make answer to the petition, for they then stand confessed, and the finding of the jury in the vendee's favor as to them cannot prejudice the rights of the other defendants, who are subsequent purchasers, with knowledge, from the same vendor.

2. ———: ———: **All Issues.** The submission of issues to the jury in an equity case as to which there is no controversy, is just the same as if they had not been submitted at all. But if submitted, the finding of the jury upon the issues properly submitted, being the real issues in the case, will not be affected by the improper submission of other questions, or the jury's findings thereon.

3. ———: ———: **Improvements by Tenant: Notice: Review of Evidence.** Whether or not the trial court, in a suit for specific performance of a contract for the sale of land, erroneously admitted evidence as to whether certain improvements were made by the vendee during the time he occupied the premises· as the vendor's tenant, where the one issue is whether or not subsequent grantees from the same vendor had notice of the prior sale, is of no consequence on appeal, since the appellate court in an equity case will review the evidence contained in the record, determine what is competent, and make its own findings and conclusions. So, for the same reason, it is not material that the trial court submitted to the jury an interrogatory as to the value of such improvements, because their finding in that regard was wholly disregarded by the chancellor in his decree, and their finding as to notice was adopted by him and therefore became his finding.

4. ———: **Equity: Errors in Admission of Evidence and Instructions.** The decree of the chancellor may be entirely correct notwithstanding errors in the instructions or the erroneous admission of evidence; and if upon an examination of the evidence as contained in the record and the issues as contained in the pleading, it is found by the appellate court to be correct, it will be affirmed, notwithstanding such errors.

5. ———: ———: **Submission of Evidence to Jury: Other Findings.** The chancellor has the right to take the opinion of a jury upon any specific question of fact involved in the case, and to pass upon other facts in issue upon the evidence before him, and to make his own findings upon all the issues in the case.

6. ———: **Subsequent Purchaser: Notice.** All that the plaintiff vendee in his suit for the specific performance of a contract for the purchase of land need do in order to show that the defendants, being subsequent purchasers from the same vendor, had actual notice of a prior purchase by him, is to show that they had notice of such facts and circumstances as would have put an ordinarily prudent and cautious person upon inquiry regarding said prior sale. And where the evidence on that question is conflicting, and the jury have found they did not have such notice, and that finding was approved by the chancellor, the appellate court will defer to that finding, unless it is manifestly erroneous.

Appeal from Audrain Circuit Court.—*Hon. H. W. Johnson*, Judge.

AFFIRMED.

*Fry & Rodgers* for appellants.

(1) All the evidence offered in the case is presented in appellants' abstract and this court will hear the case anew, and render such decree on the evidence and the equities arising therefrom as is proper and right. The verdict of the jury not being supported by the greater weight of fact, this court will reverse the judgment. Courtney v. Blackwell, 150 Mo. 245; Lewis v. Rhodes, 150 Mo. 501; Bouton v. Bippin, 192 Mo. 474; Johnson v. Ewald, 82 Mo. App. 283; Keiser v. Gomman, 95 Mo. 217. (2) The court erred in submitting the case to a jury. It did not submit a single issue of fact but submitted the entire case to the jury. Only an issue of fact should be submitted to a jury and the court should hear and try the case. Leeper v. Lyons, 68 Mo. 216. The first, second, fourth and fifth issues related to matters between respondent and Henry Waddington who was served by publication and made default.

Morris v. Morris, 28 Mo. 117; Estes v. Fry, 94 Mo. 271; Reed v. Ball, 100 Mo. 62. The fact that the trial court submitted improper and confusing issues to the jury and admitted improper evidence shows the court was perplexed and confused as to the issues to be tried and was led by the findings of the jury on such issues to a wrong conclusion. (3) The court erred in admitting evidence of improvements made on the farm by respondent and the values of the same. The improvements made and the character of them and especially the value of the same could not possibly have been any notice to appellants of respondent's contract of purchase, especially as there was not an item of evidence that appellants had any notice of the contract or of the improvements being made on same or of plaintiff's possession. The action of the court in admitting such evidence under the pleadings shows the court was perplexed and confused as to the real issue and blindly followed the finding of the jury. (4) The court over appellants' objections permitted respondent to ask several witnesses, his neighbors, if it was not "common knowledge" in respondent's neighborhood on June 1, 1903, that he had bought this land. The witnesses testified that they heard it said he had bought it. This was purely hearsay and was not proof of common knowledge. There is no evidence that this neighborhood talk ever came to appellants or that they were in a position to know of it, as they lived miles away from said neighborhood. "Knowledge" and "notice" are not synonymous terms and such knowledge would not have been notice. Clark v. Ingram, 33 S. E. 802. (5) The only evidence in this case of notice to appellants of respondent's claim to the land was the testimony of Mrs. Charles Hildebrand. She had no interest in the land and was in no way related to respondent. She was a stranger to the land, the title and to the appellants. 2 Pomeroy's Eq. Jur. (1 Ed.), secs. 597-602; Wade on Notice, sec. 29; Morrison v. Juden,

145 Mo. 299; Butterick v. Holden, 13 Metc. 355.    (a)
The burden is on the plaintiff to prove actual notice
of the outstanding title.    (b)    Appellants are posi-
tive that the deed was delivered to them before they
met Mrs. Hildebrand.    They both testify that they had
no information from any source that plaintiff had
bought or had any interest in the land when they
bought it from Henry Waddington and deny having
any conversation with Mrs. Hildebrand about this land
or about plaintiff.    (c)    Mrs. Hildebrand's testimony
should be taken with great allowance.'    She was not
certain as to material facts and could have been mis-
taken.    She was personally acquainted with Adams
and had no acquaintance with Lane, yet she claims that
Lane did the talking and she is not certain that she
recognized Adams.    (6)    The evidence of Bart Wad-
dington, father of respondent, was not evidence of no-
tice to appellants as to respondent's claim to the land.
1.    There is no evidence as to when Arnold made such
remark to Adams, if made.    2.    If Arnold did make
such remark to Adams it was a mere assertion with no
reference to the purchase or any title, claim or con-
tract, on part of respondent and was no evidence of
actual notice.    Morrison v. Juden, 145 Mo. 299; 2 Pom.
Eq., 602.    3.    Arnold testified he did not tell Bart
Waddington that Arnold told him that he would have
trouble.    (7)    The fact that plaintiff was in possess-
ion of the farm as Henry Waddington's tenant was no
notice of his claim of title under unrecorded contract.
Vaughn v. Tracy, 22 Mo. 415; Rogers v. Hussy, 36
Iowa 664; Whitman v. Taylor, 60 Mo. 127.

*D. A. Murphy* and *O. Hitt* for respondent.

(1)    There was a valid contract between plaintiff
and Henry Waddington for the purchase and sale of
the land, which being the case, it was not necessary for
the plaintiff to hold a deed from him in order to main-

tain this action.  Sensenderfer v. Kemp, 83 Mo. 581;
Swisher v. Sensenderfer, 84 Mo. 104; Widdicombe v.
Childers, 84 Mo. 382; Davis v. Briscoe, 81 Mo. 27; 2
Pom. Eq. Jur. (2 Ed.), p. 958, sec. 688.   (2)   There
was no incompetent evidence admitted on behalf of
plaintiff and no competent evidence, offered by de-
fendants, rejected; but if there was, this being a suit
in equity, this court would, in either case, reject the
incompetent evidence and consider the competent evi-
dence improperly excluded, and not reverse the case
because of any error that may have been committed
by the trial court in either regard.  Trust Co. v. Mc-
Donald, 146 Mo. 479; State ex rel. v. Jarrott, 183 Mo.
204; Barrett v. Davis, 104 Mo. 549; Davis v. Kline, 96
Mo. 401; Hanna v. South St. Joseph Land Co., 126 Mo.
16; Goodrich v. Harrison, 130 Mo. 263; Kleimann v.
Gieselmann, 114 Mo. 437.  In an equity case, where
all the evidence is before the court, it will review it
on the legitimate evidence and give such judgment as
the legitimate evidence warrants, regardless of errors
committed by the trial court.  Sheridan v. Nation, 159
Mo. 41.   (3)   Under section 722, Revised Statutes
1899, the trial court was authorized to submit all such
issues to the jury as it thought necessary, whether one
or several.  Cockrell v. McIntyre, 161 Mo. 59; Hall v.
Harris, 145 Mo. 614; Burt v. Rynex, 48 Mo. 309;
Hickey v. Drake, 47 Mo. 569.   (4)   Defendants, before
and at the time they paid Henry Waddington for the
land, had actual notice of the prior purchase thereof
by the plaintiff, and were in possession of such infor-
mation as made them chargeable with actual notice.
The evidence is amply sufficient to support the find-
ings and judgment of the court below.  Stuart v. Ram-
sey, 196 Mo. 404; Taffe v. Kelley, 110 Mo. 127; Meier
v. Blume, 80 Mo. 179; Drey v. Doyle, 99 Mo. 459; Davis
v. Briscoe, 81 Mo. 27; Martin v. Jones, 72 Mo. 23; Sen-
senderfer v. Kemp, 83 Mo. 581; Widdicombe v.
Childers, 84 Mo. 382; Maupin v. Emmons, 47 Mo. 304;

Major, Admr. v. Buckley, 51 Mo. 227; Griffin v. Railroad, 82 Mo. App. 93; Edwards v. Railroad, 82 Mo. App. 96; Arnholt v. Hartwig, 73 Mo. 485; Dougherty v. Cooper, 77 Mo. 528; Ins. Co. v. Smith, 117 Mo. 261. (5) From May 27, 1902, until June, 1903, plaintiff was in actual and open possession of the land, culti-vating it and making various and substantial improvements thereon and living thereon with his family in a house right near the public road running north and south along the west side. Unquestionably he was in possession of this land from and after March 1, 1903, under his contract with Henry Waddington; and unquestionably Lane and Adams knew of this possession by him, before they bought and paid for the land. They knew more—they knew, or at least were so told by Mrs. Hildebrand, that he was in possession of the land as its owner. Westminster College v. Peirsol, 161 Mo. 287; Haworth v. Taylor, 108 Ill. 275; Beck Lumber Co. v. Rupp, 188 Ill. 566; Franz v. Orton, 75 Ill. 100; Smith v. Jackson's Heirs, 76 Ill. 254; Bank v. Sperling, 113 Ill. 273; Gallagher v. Northup, 74 N. E. 713; Freeman v. Moffitt, 119 Mo. 280; St. Joseph v. Baker, 86 Mo. App. 310; Wiggenhorn v. Daniels, 149 Mo. 160; Masterson v. Railroad, 72 Mo. 342; 2 Pom. Eq. Jur. (2 Ed.), pp. 595 to 601; Raritan Water Power Co. v. Veghte, 21 N. J. Eq. 478; Hoy v. Bramhall, 19 N. J. Eq. 563; Randall v. Silverthorn, 4 Pa. St. 173; Paul v. Connersville, etc., 51 Ind. 530. (6) If Lane and Adams, at or prior to the time they actually paid for the land, had such information as to make them chargeable with knowledge of plaintiff's prior purchase thereof, the judgment of the trial court was for the right party. Edwards v. Railroad, 82 Mo. App. 100; Dougherty v. Cooper, 77 Mo. 528; Digley v. Jones, 67 Mo. 104; Dixon v. Hill, 5 Mich. 408; Paul v. Fulton, 25 Mo. 163; Wormley v. Wormley, 8 Wheat. 449. Lane and Adams are chargeable with notice they received prior to the time the Adams' check, or their

check on the Savings Bank, whichever it was, was actually cashed and charged up to him or them and the money sent to Henry Waddington. Arnholt v. Hartwig, 73 Mo. 485; 2 Pom. Eq. Jur. (2 Ed.), secs. 750, 751, 753. (7) Neither Lane nor Adams pretended to claim that either of them ever made any inquiry of Henry Waddington, Bart Waddington, the plaintiff, or of Arnold at the First National Bank, as to whether Henry Waddington had sold the land, and they could easily have inquired of any or all of them. Under the facts in the case they should have at least inquired of Henry Waddington and the plaintiff as to whether plaintiff had purchased the land, and an examination of the records by Adams was insufficient. Griffin v. Railroad, 82 Mo. App. 93; Shotwell v. Harrison, 30 Mich. 179; Munroe v. Eastman, 31 Mich. 283; Wade on Notice, sec. 270; 2 Pom. Eq. Jur. (2 Ed.), sec. 601. (8) Much weight should be given to the evidence of Mrs. Hildebrand, because she was a disinterested witness, and, being a near neighbor of plaintiff, would likely know whether he had bought the Henry Waddington place. 2 Pom. Eq. Jur. (2 Ed.), secs. 599, 601; Butcher v. Yocum, 61 Pa. St. 168; Mulliken v. Graham, 72 Pa. St. 484; Ripple v. Ripple, 1 Rawle 386; Pringle v. Dunn, 37 Wis. 465. (9) As to whether Lane and Adams, before they paid over the purchase money for the land, had actual notice of plaintiff's prior purchase thereof, or, if not, whether they had such information as would have put a reasonably prudent man upon inquiry as to plaintiff's prior purchase of the land, and if such inquiry had been prosecuted with due diligence by them it would have led to a knowledge of plaintiff's purchase, were questions of fact which the court submitted to the jury under proper instructions. The jury, as did also the court, found these issues in favor of the plaintiff, and even though this is an equity case, the evidence as to the main issues being all oral, this court will defer

largely to said findings, especially as the jury and the trial court were confronted by the witnesses and saw and heard them testify. Chance v. Jennings, 159 Mo. 560; Dunivan v. Dunivan, 157 Mo. 160. (10) In the negotiations between Lane and Adams on the one part, and Henry Waddington on the other, Arnold acted in a dual capacity, he was both the agent for Lane and Adams as well as for Henry Waddington, and finally he sent the money for Lane and Adams to Henry Waddington. Henry Waddington in his deposition stated that Arnold was the agent of Lane and Adams; that during the progress of the deal between said defendants and Henry Waddington, and at the time of its consummation, they knew of 'the prior purchase of the land by plaintiff, and that plaintiff had in their bank and in Arnold's custody $2,000 and a note for $690.40, for the purpose of completing his purchase; Lane and Adams are chargeable with such knowledge. Meier v. Blume, 80 Mo. 179.

BURGESS, J.—This is a suit in equity for a decree divesting the defendants, Lane and Adams, of the legal title to certain lands in Audrain county, vesting the same in plaintiff, and for other relief.

The petition, omitting the caption, is as follows:

"Plaintiff for his second amended petition herein states that on the 27th day of May, 1902, and for several years prior thereto, the defendant, Henry Waddington, of the State of Florida, was the owner of the following-described land situated in the county of Audrain and State of Missouri, to-wit: Lots one and two, the same being the southwest quarter of section thirty-one, township fifty-one, north, range seven west of the 5th Principal Meridian, and containing one hundred and forty-four and fifty-two hundredths acres, more or less; that on said May 27th, 1902, by contract in writing duly entered into and executed by and between plaintiff and said Henry Waddington, the plaintiff

purchased the said land from the said Henry Wad-
dington for and at the price of $20 per acre, and there-
upon paid said Henry Waddington $200 on said pur-
chase price, and by said contract was to pay said
Henry Waddington the balance of said purchase price
upon the said Henry Waddington's delivering to him
a good and sufficient abstract of the title to said land,
a warranty deed therefor, and full possession and con-
trol thereof, and all appurtenances thereto belonging,
all of which things the said Henry Waddington by his
said written contract with the plaintiff agreed to do
and perform on March 1, 1903. Plaintiff cannot file
herewith the original of said written contract because
it is on file with the petition in the case of Bert Wad-
dington, plaintiff, vs. Henry Waddington, defendant,
now pending in this court, but a copy of which written
contract is in words and figures as follows:

" 'Benton City, Mo., May 27th, 1902.

" 'Know all men by these presents that Henry
Waddington, a widower, of Crystal, Citrus county,
Florida, party of the first part, and Bartholomew
Waddington, Jr., of Benton City, Mo., party of the
second part, do enter into the following agreement, to-
wit: Party of the first part do on this day sell to
party of the second part, the following described lands,
viz.: Lots one and two southwest quarter of section
thirty-one, township fifty-one north, range seven west
of the 5th P. M., Audrain county, Missouri, and
containing about one hundred and forty-four and
fifty-two hundredths acres more or less, for the sum
and consideration of twenty dollars per acre, and by
the party of the second part paying on this day the
sum of two hundred dollars by draft from the Mexico
Savings Bank to the National Park Bank, New York
City, N. Y., No. 8869, dated May 27th, 1902, of which
a receipt is hereby acknowledged for said sum of two
hundred dollars. as part payment on said lands herein
described.

" 'Party of the first part do hereby agree to make, execute and deliver his warranty deed and furnish a good and sufficient abstract of title of all said land described herein, on March 1st, 1903, and the full possession and control of said farm and all appurtenances thereto belonging and upon delivery of the same by first party to the said second party herein said second party herein do hereby agree to pay the remainder of the purchase money in cash in hand.

" 'Witness our hand and seals on this, the 27th day of May, 1902.

" 'HENRY WADDINGTON,                (Seal.)
" 'BARTHOLOMEW WADDINGTON, JR. (Seal.)'

"Plaintiff further says that on March 1, 1903, in pursuance of and under said written contract and by and with the consent of said Henry Waddington, he took actual possession of said land and all appurtenances thereto belonging and ever since said date he has been in the actual, open, notorious and continuous possession thereof under and by virtue of said contract of purchase; that on March 1, 1903, plaintiff was ready, able and willing, and ever since said date has been ready, able and willing, to fully carry out, do and perform his part of the said written contract; that on or about March 1, 1903, and at divers times since then, he so notified said Henry Waddington and requested him to execute and deliver to him a deed to said land, as by his said contract in writing he had obligated himself to do.

"Plaintiff further states that during the year 1898 and until said Henry Waddington sold said land to plaintiff, on May 27th, 1902, said defendant Henry Waddington was the owner thereof and rented the same to the plaintiff from year to year, upon the express terms and agreement that plaintiff, during his tenancy, should have the privilege of making such repairs and improvements on said land as plaintiff in his judgment might deem proper or necessary, and

that if said Henry Waddington did not sell the land to plaintiff, he would pay the plaintiff for such repairs and improvements such sums as they might be reasonably worth, but that if he, Henry Waddington, should sell the said land plaintiff should have the first chance to buy it and should have it at the price of $20 per acre, and in the event of plaintiff's so purchasing said land, he was to receive nothing from said Henry Waddington for such repairs and improvements as he might make thereon; that in pursuance of said understanding and agreement with said Henry Waddington and by reason thereof the plaintiff was thereby induced to make and did make on said land, from March 1, 1898, to May 27th, 1902, the following improvements and repairs, for which he has received no pay or consideration, to-wit:

"That during the year 1899 he raised the old house and put a new foundation under it, put new roof on said house and new flues therein and two doors and windows, and casing for the same, at the cost of labor and material of the value of $45; he built forty rods of fencing at a cost of labor and material of the value of $16.30; that some time during the year about 1898 he constructed a summer kitchen of the value of $7.50; one hen house of the value of $19.65; sixteen rods of garden fence of the value of $8; reset barn fence and put in two new gates at a cost of labor and material of the value of $8; rebuilt one-quarter of a mile of fencing, at a cost of labor and material of the value of $17; sowed twelve acres of pasture at a cost of labor and seed of the value of $6; that during the years about 1898 and 1899 he did one mile of ditching of the value of $12; that during the year 1899 he built a new room to the house, then upon the premises, of the value of $160; that during the year 1900 he made the following improvements: He built a hog shed of the value of $11.60; dug one pond at a cost of labor of $12; furnished and hung one gate and put manger in barn of

the value of $4.10; that about during the year of 1901 he rebuilt one-quarter of a mile of fence at a cost of labor and material of the value of $4.

"Plaintiff further states that on or about March 1, 1902, he again rented said premises from said Henry Waddington, from March 1, 1902, until March 1, 1903, upon the same terms and agreement as for the years 1898, 1899, 1900 and 1901, as above stated, and that while plaintiff was so in possession of said land under said rental contract he purchased the same from said Henry Waddington, as above stated, May 27th, 1902, and that afterwards, relying upon said written contract of purchase and by reason thereof and by and with the consent of said Henry Waddington, and before June 11th, 1903, he made the following improvements and repairs on said property, to-wit:

"He painted the house at a cost of labor and material of the value of $18; he guttered the house at a cost of labor and material of the value of $9.50; he underpinned the house and graded the yard at a cost of labor and material to the value of $4; he raised and covered the well at a cost of labor and material to the value of $7.36; he built 454 feet of picket fence around the yard at a cost of labor and material of the value of $78.12; he set out and furnished 20 shade trees at a cost of $5; he furnished and set out 63 fruit trees at a cost of $34.20; he dug one cellar at a cost of $23.65; he built three-fourths of a mile of wire fencing and furnished the wire for the same, at a cost of labor and material of the value of $73.36; he furnished and put up four gates and posts therefor at a cost of labor and material of the value of $10; he built one quarter of a mile of wire fencing and furnished the material therefor, at a cost of labor and material of the value of $11.20; he graded and ditched the barn yard at a cost of $4; he sowed ten acres in grass and furnished the seed therefor at a cost of $4.30; he cut down and hauled away 20 dead shade trees at a cost of $5. In ad-

dition to said improvements and repairs the plaintiff, during the year 1903, left idle and uncultivated forty acres of tillable land, on said premises, and allowed the same to grow up in weeds, but would have culti-vated the same but for his said purchase thereof, that the cultivation of said land would have been reason-ably worth $80.

"Plaintiff further alleges that on or about June 3rd, 1903, the defendants, Lane and Adams, with full knowledge and actual notice of plaintiff's said contract with said Henry Waddington for the purchase of said land and with full knowledge and actual notice of all other facts above set forth and alleged, did fraudu-lently procure from said Henry Waddington a war-ranty deed, executed and delivered by him to them, to the said land, in fraud and violation of the rights of this plaintiff, and said Lane and Adams filed said deed of record in the office of the recorder of deeds in Audrain county, Missouri, on or about June 11th, 1903, and the same is of the record in said office in Deed Book 61 at page 453, and that said Lane and Adams, on June 11, 1903, executed and delivered to defendant, Fred A. Morris, trustee, a deed of trust on said land to secure the payment of a certain nego-tiable promissory note, in said deed of trust described, which said note was for the principal sum of $3,312 and was made payable to the order of defendant, S. M. Locke, bears interest at the rate of six per cent per annum from its date, interest to be compounded if not paid annually and was to become due in 90 days after July 11, 1903; that said deed of trust is of record in the office of said recorder of deeds in Deed of Trust Book 25 at page 135 thereof, and is wholly unsatisfied of record; that plaintiff is informed and believes and therefore charges that defendant, S. M. Locke, the payee in said note, secured by said deed of trust, has duly assigned the same to the defendant, the Bank of Warren County, and that said Bank of Warren County

is now legal holder thereof and the same remains unpaid.

"Plaintiff further says that by reason of the facts aforesaid and a previous order of this court, made at its September term, 1903, the said Henry Waddington, Fred A. Morris, S. M. Locke and the Bank of Warren County are made parties defendant in this amended petition; and that the defendant, Henry Waddington, is a non-resident of the State of Missouri and by reason thereof ordinary process cannot be served on him in this State.

"Plaintiff further states that on March 1, 1903, and at divers times since then, he has requested the said Henry Waddington to make and deliver to him an abstract of the title to said land and a deed thereto, as provided by said written contract, but that said Henry Waddington, without any legal cause therefor, has wholly failed and refused to do so; that plaintiff has always been ready and willing and is still ready and willing to carry out and perform his part of the said contract for the purchase of said land, and has so notified the said Henry Waddington at divers and sundry times.

"Plaintiff further says that if defendants, Lane and Adams, be allowed to hold and own said land, he will suffer great and irreparable loss and injury by reason of the facts aforesaid alleged. The plaintiff prays the court for a decree declaring the defendants, Lane and Adams, trustees for plaintiff, and that said Lane and Adams be divested of the legal title to said land and that it be vested in plaintiff; that defendants, Lane and Adams, be required to execute to plaintiff a warranty deed to said property; that plaintiff pay the legal holder and owner of said note secured by said deed of trust the balance due from him on the purchase price of said land, as per his written contract with said Henry Waddington, and that said Lane and Adams be required to pay the balance of said note, if any, re-

maining unpaid, the cancellation of record of said deed of trust, and for such other relief as may be proper in the premises, and for costs of the suit.''

The answer of defendants Lane and Adams was as follows:

''Now come the defendants, John Lane and, George W. Adams, and for their answer to plaintiff's amended petition state that on the 29th day of May, 1903, Henry Waddington was the owner of the land described in plaintiff's petition and was in possession of the same. They state that on or about said date they purchased said land from said Henry Waddington, the then owner of the same, at and for the sum of $3,312 cash, which said sum they paid to said Henry Waddington on or about the 30th day of May, 1903, and that said Henry Waddington in consideration therefor did on the 3rd day of June, 1903, by his general warranty deed, convey said land to these defendants, who ever since have been and are now the owners of the same and that said warranty deed was duly recorded in the recorder's office of Audrain county, Mo., on the 11th day of June, 1903.

''Further answering defendants deny that said Henry Waddington did at any time sell said land to the plaintiff and they deny that said Henry Waddington, did on the 27th day of May, 1902, or at any other time, sign his name to or execute the contract set forth in plaintiff's petition with this plaintiff and defendants deny each and every allegation and statement in plaintiff's amended petition set forth except what is above specifically admitted.

''Further answering defendants state that when they purchased said land from said Henry Waddington and received warranty deed dated June 3rd, 1903, they had no knowledge, notice or information of any of the facts set forth in plaintiff's petition and deny that they had any knowledge, notice or information that

202 Sup—26

said Henry Waddington had previously entered into any contract with the plaintiff or had previously sold, contracted or entered into any negotiation for the sale of said land to this plaintiff."

The answer of defendants Locke and Morris was a general denial.

The answer of the Bank of Warren County was, first, a general denial, and then a plea that they owned the note for $3,312 referred to in plaintiff's petition, and that they purchased the same, before maturity, in good faith.

Defendant Henry Waddington was duly served by publication, but made no defense.

Plaintiff's reply to answer of Lane and Adams was a general denial of all new matter contained in said answer.

The court, over the objection of defendants Lane and Adams submitted the following issues to the jury:

"1st. Did the defendant, Henry Waddington, in the year 1902, by contract in writing, sell to plaintiff lots one and two, the same being the southwest quarter of section 31, township 51 north, of range 7 west of the 5th P. M., in Audrain county, Missouri?

"2nd. Was defendant, Henry Waddington, without good cause therefor, guilty of a breach of said contract of sale, if the jury find there was such a contract between plaintiff and Henry Waddington?

"3rd. Did defendants, Lane and Adams, before and at the time they paid for the land described in interrogatory 1, under their purchase thereof from defendant, Henry Waddington, have actual notice of the prior purchase of said land from said Henry Waddington by the plaintiff, if the jury find that plaintiff had, by contract in writing, previously purchased said land from said Henry Waddington?

"4th. What, if anything, was the value of the improvements put upon said land by plaintiff, between May 27th, 1902, and June 11th, 1903?

"5th. If the defendant Henry Waddington had executed and delivered to plaintiff a deed to the land in question, in pursuance of his contract of sale with plaintiff, if the jury find there was such a contract, would plaintiff, upon the delivery of such deed, have been ready, able and willing to perform his part of said contract?"

According to the evidence, the plaintiff had for some years prior to the institution of this suit been a tenant of his uncle, defendant Henry Waddington, a resident of the State of Florida, and as such tenant occupied and possessed the land and premises in question, at a yearly rental of $225, from March 1, 1898. On May 27, 1902, plaintiff and his said uncle entered into the contract as set out in the petition for the sale and purchase of said land. This contract, which was introduced and read in evidence, and as to the sufficiency of which there is no controversy, was never recorded.

The last time plaintiff rented the land from his uncle for one year was on March 1, 1902, at which time he sent his uncle $25 in money as part payment, giving him his note for $200, due March 1, 1903, for the balance of the rent. It appears that R. R. Arnold, cashier of the First National Bank at Mexico, had for many years been acting as agent for said Henry Waddington, collecting his rents and attending to other business for him; that the said note for $200 was sent to him for collection in January, 1903, and that plaintiff paid and took up the note on January 27, 1903, although not due until March 1, 1903.

There would appear to have been a misunderstanding on the part of Henry Waddington relative to the payment of the said rent note by plaintiff; and, claiming that it had not been paid, he refused to close the land deal in accordance with the contract between himself and plaintiff. In order to convince his uncle that the note had been paid, the plaintiff, in a letter

dated March 3, 1903, and duly identified, sent his uncle the said note, upon which was stamped "First National Bank; paid Jan. 27th, 1903, Mexico, Mo." The letter, omitting personal reference as to health, etc., was as follows:

"Dear Uncle: It is with pleasure that this evening I write you a few lines in regard to a settlement. I am ready to settle now for the place. Inclosed you will find my last year's note for $200 dollars; is that the note you want, and the $25 dollars I will settle when I settle with you for the place. I will close by asking you to write soon, as the time is up now for a settlement."

Other correspondence with reference to the land deal ensued, and on May 11, 1903, Henry Waddington wrote his nephew, the plaintiff, as follows:

"My Dear Nephew: I will endeavor to answer your letter. . . . Yes, but I know you sent $200, two hundred dollars, when I was to sell you the place, or when you was to buy the place. But it is not that, it is the $200 two hundred dollars that you owe me for rent yet, and when you pay that up, then I will send the papers to Mr. R. R. Arnold and he will deliver them to you. And you say the $690.40 is in a note, and you can put it in cash if I prefer it. Well, it don't make any difference to me whether it is in a note or in cash."

The price of the 144.52 acres of land, at $20 per acre, the consideration mentioned in the contract, was $2,890.40. When the contract was made the plaintiff paid Henry Waddington $200, the receipt of which is acknowledged in the contract. As to the balance of the consideration, plaintiff testified that for the purpose of paying the same he deposited $2,000 and his note for $690.40 in the Mexico Savings Bank, on March 1, 1903, and that afterwards, at the suggestion of R. R. Arnold, he withdrew the money and the note from said bank and placed the same in the First National Bank.

Arnold corroborated this testimony, stating that the money and the note were placed in his bank on April 11, 1903, and had not been removed therefrom. He said that the suggestion made by him as to placing the money and note in his bank was in response to a letter, dated March 30, 1903, received from Henry Waddington with reference to the sale of the property to plaintiff and the placing of the money in the bank, which letter was read in evidence. Witness Arnold said that the money was subject to plaintiff's check, but that the note was made payable to Henry Waddington. He admitted that he knew or "guessed" for what purpose the money and note were placed in his bank.

Another letter, dated April 27, 1903, written by Henry Waddington to Arnold, was read in evidence. In this letter defendant Waddington says: "The deed calls for 144.52. Yes, Bert Waddington was to buy the land at $20 per acre. As you can see it amounts to $2,890.40 instead of $2,690. You say that they have deposited $2,000 and a note for $690. Now if it is $890.40, then I will fill out the deed and send it to you, and you to give it to Bert Waddington."

The last letter received by plaintiff from his uncle, with reference to the land transaction, was dated May 25, 1903, and was as follows:

"Dear Nephew: In reply to yours of the 23rd stating that you did not owe me $200, why that is a mistake, and if you want the place you will have to send me the $200 dollars at once, and if you don't do this I shall never send the deeds. I have still got to pay interest on Frenches note, so if you want me to sign and send the deeds, you must send me the $200, and that at once, for I will not put up with such doings."

Although Henry Waddington, in his letters to Arnold and his nephew, insists on the payment of $200 which he appears to believe was owing to him by his nephew for rent, the latter testified positively that he

did not owe said sum to his uncle, and stated that in order to convince his uncle that he had paid same, he sent him the rent note for $200, marked "paid" by the bank which held it for collection. In answer to the question whether or not, if the deed from his uncle had come March 1st, 1903, he would have been ready, able and willing to have paid the money for the land, plaintiff said he would.

Plaintiff testified as to certain improvements made by him on the farm between May 27, 1902, the date of the contract, and March 1, 1903, the date when, according to said contract, the deed to said land was to be executed and delivered. He also made a statement as to improvements made by him on the farm prior to those dates, while a tenant of his uncle, the understanding between him and his uncle being, as he stated, that he should have "the refusal of the place at $20 per acre," and that if his uncle did not sell the place to him, the said improvements would be paid for by his uncle. Plaintiff further testified that he and his wife and child were still living on the place, in a house 50 or 60 feet from the public road, and that since March 1, 1903, he had put in and cultivated crops to the extent of fifty acres of corn, thirty-five acres of oats, ten acres of grass, as also a garden.

It appears from the evidence that, while plaintiff was waiting for his uncle, Henry Waddington, to send him the deed to the land, in accordance with said contract, Henry Waddington sold the land to defendants Lane and Adams for a consideration of $3,312, the deed therefor being made and executed June 3, 1903. Of this transaction plaintiff had no knowledge until after it was accomplished. There is considerable evidence respecting the time or date of the acceptance by Lane and Adams of the deed made to them by Henry Waddington, and their knowledge of the prior deal between Henry Waddington and the plaintiff.

Lane and Adams were real estate men, living at

Mexico, Missouri, and in pursuance of their business, drove a good deal about the country in order to acquaint themselves with lands and their values, and buy or sell farms or other real property. According to the testimony of Mrs. Charles Hildebrand, who, with her husband, lived about three-quarters of a mile from the home of plaintiff, she had a conversation with the said defendants some time in May, 1903, with reference to the farm occupied by plaintiff, the ownership thereof, and other matters. Witness said that her house was south of plaintiff's, two other farms lying between; that her husband was away from home the day this conversation was had, which she said was some time before the 27th day of May, 1903. She said that on the day in question Lane and Adams drove up to her house in a buggy; that they came from the north, or in a direction from plaintiff's place. The following conversation ensued:

"Q. Did you have any conversation with either of them? A. Yes, sir.

"Q. Which one? A. Mr. Lane.

"Q. State what that conversation was and what he said to you and what you said to him? A. The first question he asked me was who lived there at our place, and I told him, and he wanted to know if we owned the place; I told him we did, and he asked me if it was for sale; I told him I didn't know, I supposed it was if we got our price, and he asked me what Mr. Hildebrand held it at, and I told him $75 an acre, and then he asked me who lived at the next house.

"Q. Which house was that? A. That's on Mr. Waddington's place just next to ours.

"Q. Mr. Waddington's place; what Waddington? A. Bart Waddington.

"Q. That's the old gentleman? A. Yes, sir; and I told him a man named Garvis lived there, and he asked me if that was the Bart Waddington place; I told him it was; he asked if I knew how many acres

was in the tract; I told him I thought about 200 acres; he asked me if I knew what Mr. Garvis paid for the place; I told him I thought about $45 an acre; I wasn't correct, I didn't make any positive answers; I didn't know; I was telling him the best I knew; he asked me who lived on the opposite side of the road, the next house, the second house, and I told him Richard Waddington, and he asked me who owned the place; I told him I thought Mr. Barnes of Mexico, and then he asked me who lived at the next house.

"Q. What house was that? A. That was Bert Waddington's, and I told him Bert Waddington, and he asked me who owned it; I told him Mr. Bert Waddington, Mr. Bart Waddington's son, and he says, 'Is that the old Henry Waddington place?' I told him it was; he asked how many acres was in the tract of land; I told him I wasn't sure but I thought 160 acres.

"Q. And then what occurred after that conversation, if anything, what took place then? A. Well, with that they drove off.

"Q. Drove off? A. Yes, sir.

"Q. Could you say which way they went after they left your place? A. I am not positive but I think they turned and went back north."

Both Lane and Adams denied having seen or conversed with Mrs. Hildebrand in May, but that about June 9th they stopped and made a few unimportant inquiries of her, and that no such conversation took place as that stated by Mrs. Hildebrand.

Neither Lane nor Adams made any inquiry of plaintiff whatever regarding the land or its ownership. Adams testified that he never examined the place or the improvements thereon before they purchased the farm. Lane said that he was never closer to the place than the public road, and never examined the land or improvements.

When Lane and Adams decided to buy this property, they went to the First National Bank, at Mexico,

where they obtained the address of Henry Waddington, and the negotiations for the purchase and sale were afterwards carried on through Mr. Arnold, of that bank. The deed and abstract from Henry Waddington to Lane and Adams did not arrive at the bank till June 8th, but as to when the deed was accepted and the money paid by Lane and Adams the evidence is not very clear. On June 1, 1903, Adams left with the First National Bank his check for $3,312, payable to Henry Waddington or bearer, on which check was written, "To be paid on acceptance of deed." This check was not marked "paid," nor charged up to Adams until June 11, upon which date the deed was recorded. Adams testified that an old abstract came with the deed to the bank; that he took said abstract to Mr. Fry to examine it, and that Fry advised him to have a new abstract made; that a new abstract was made June 9th, and Mr. Fry examined it. The opinion of Mr. Fry as to the new abstract of title was not given until June 11th, but Adams said that Fry had previously expressed the opinion that the title was all right, and that relying on such verbal opinion, they had accepted the deed on June 8th, the day it was handed them. Nevertheless, the check was not paid nor the money forwarded to Henry Waddington until June 11. The full amount of the check for $3,312 was not forwarded to Henry Waddington, a portion being retained in compliance with a telegraphic instruction from Henry Waddington to the First National Bank to pay off a mortgage held by one French on the land.

Bart Waddington, father of plaintiff, testified that on June 13th or 14th, 1903, he saw defendant Adams at the corner of the courthouse square, and spoke to him about the purchase of the land by Lane and Adams from Henry Waddington. His testimony upon this point is as follows: "I asked him if Mr. Arnold didn't tell him that my son owned that place.

He said Mr. Arnold told him if he bought that place he would get himself in trouble, and I told him my son owned that place, and he said he had nothing to go by only the records, and the records didn't show that my son owned the place at all." Adams denied having had such conversation with Mr. Waddington.

Plaintiff introduced a number of witnesses from his neighborhood, all of whom testified that prior to June 1, 1903, it was a matter of common talk and common knowledge in the neighborhood that plaintiff had bought the Henry Waddington place.

Henry Waddington's deposition, taken by defendants, was read in evidence, to which deposition were attached the letters which passed between Henry Waddington and plaintiff heretofore referred to, and which were identified by the deponent. In this deposition Henry Waddington stated that there was no correspondence between himself and Lane and Adams in which anything was said to the effect that plaintiff had failed to carry out his part of the contract. He also stated that Arnold acted as his agent to receive money from plaintiff to be paid on rent account and on account of the purchase of the place, and that Arnold knew about the contract between him, deponent, and the plaintiff.

S. M. Locke, cashier of the Mexico Savings Bank, testified that on June 11, 1903, Lane and Adams applied to him for a loan of $3,312 and that he made the loan, receiving therefor their note for that amount, the same being secured by a deed of trust on said land, Fred A. Morris, vice-president of the bank, being named as trustee. He considered the note good without the deed of trust, but they suggested giving it as security. Witness said that Lane and Adams stated that they bought the said land as partnership property. He also said that the said note was afterwards assigned by him to the Bank of Warren County, and that it was still held by said bank.

At the instance of the respective parties the court gave to the jury a number of instructions.

The jury returned an affirmative answer to each of the interrogatories submitted to them, excepting interrogatory No. 4, respecting the value of the improvements put upon the land by plaintiff, the answer to which was, "$287.00."

On the same day the verdict was returned the defendants Lane and Adams filed a motion to set the same aside, assigning various grounds therefor, which motion was overruled, and defendants excepted. Upon motion of plaintiff, the court adopted the findings of the jury, and made a special or additional finding of facts of its own motion. The findings and decree of the court, omitting unnecessary preliminary matter, are as follows:

"And the court does hereby adopt the findings of the jury heretofore made by their verdict, and doth find: That the defendant, Henry Waddington, on or about May 27, 1902, by contract in writing, did sell the plaintiff, Bartholomew Waddington, Jr., lots one and two, the same being the southwest quarter of section 31, township 51, north, of range 7, west of the 5th P. M. in Audrain county, Missouri. And the court further finds that the amount which the plaintiff was to pay said Henry Waddington for said land was $2,890.40, $200 of which plaintiff paid said Henry Waddington at the time of the execution of said contract and that the balance remains unpaid. That by said contract, said Henry Waddington was to execute and deliver to plaintiff his warranty deed to said land and furnish him with a good and sufficient abstract of the title thereof, and full possession and control of said land and all appurtenances thereto belonging on March 1st, 1903, and, upon the delivery of said deed, abstract and possession to plaintiff, plaintiff was to pay him the balance of the purchase price of said land, to-wit, $2,690.40. The court further finds that said

Henry Waddington, without good cause therefor and against the wishes and consent of plaintiff, refused to keep and perform his said contract with the plaintiff, although often requested by plaintiff to keep and perform the same; and that he, on or about June 3rd, without the knowledge or consent of plaintiff and in violation of his said contract with him, sold said lands to defendants, John Lane and George W. Adams, and executed and delivered to them a deed to the same. The court further finds that plaintiff has at all times been ready, able and willing to carry out and perform his part of said contract with said Henry Waddington and that the reason said contract was not fully carried out was due to the fault of said Henry Waddington and not the plaintiff. The court further finds that defendants, John Lane and George W. Adams, before and at the time they paid for said land hereinbefore described, under their said purchase thereof from the said Henry Waddington, had actual notice of the prior purchase thereof by plaintiff from said Henry Waddington; that on June 11th, 1903, the said Lane and Adams executed and delivered to defendant, Fred A. Morris, trustee, a deed of trust on said land and to the use of defendant S. M. Locke, to secure the payment of a promissory note for the principal sum of $3,312, due in ninety days from June 11th, 1903, and bearing interest at the rate of six per cent per annum from said date, interest to be compounded at said rate if not paid annually, and that the defendant, the Bank of Warren County, is the legal holder of said note and deed of trust and no part thereof has been paid, except $50 interest on September 11th, 1903, by defendants Lane and Adams; that said defendants Locke and Morris at the time said deed of trust was given, and the money borrowed, and the defendant the Bank of Warren County at the time said note was assigned to it and paid for, had no notice of the prior purchase of said lands by plaintiff from said Henry

Waddington, nor any such information as would charge them, or any of them, with notice of said prior purchase, and said Bank and its assigns retain a lien upon said land for said note. By reason of the facts found as aforesaid, it is by the court ordered, adjudged and decreed that the plaintiff pay to the defendant the Bank of Warren County or its assigns, the sum of $2,808.33, the same to be applied when paid on said note for the principal sum of $3,312, the said $2,808.33 being $2,690.40, the balance of the purchase price plaintiff was to pay to said Henry Waddington for said land, with interest thereon from June 11th, 1903, at the rate of six per cent per annum to this date, and that the defendants John Lane and Geo. W. Adams pay to the defendant the Bank of Warren County or its assigns, the balance of said note of $3,312, remaining unpaid, including the interest thereon, to-wit, $598.84, and that the said Bank of Warren County, or its assigns, when the said note shall be fully paid off, shall enter satisfaction of record of the said deed of trust securing the said note given for the principal sum of $3,312 aforesaid. It is further ordered, adjudged and decreed that defendants John Lane and Geo. W. Adams and Henry Waddington, and all parties claiming through or under them, or any of them, be and they are hereby divested of all right, title, claim and interest in and to the said land, to-wit, all of lots one and two, the same being the southwest quarter of section 31, township 51, north, of range 7, west of the 5th P. M., in the county of Audrain and State of Missouri, and that the title to said land and all appurtenances thereto belonging be and the same are hereby vested in the plaintiff, Bartholomew Waddington, Jr., to have and to hold unto himself, his heirs and assigns forever, and that plaintiff recover of and from defendants, Lane and Adams, his costs and expenses in this behalf expended, and that a duly certified copy of this decree be filed for record in the

office of the recorder of deeds in and for Audrain county, Missouri.''

In due time the defendants Lane and Adams filed motions for a new trial and in arrest, which were overruled, and they bring the case to this court by appeal for review.

It is insisted by appellants that the court did not submit a single issue of fact, but submitted the whole case, to the jury, and thereby committed error.

The first, second and fifth interrogatories submitted to the jury, if they properly have any place in this record, would be well enough, perhaps, when considered in connection with the instructions regarding them. But as the questions or issues which they embrace were as to the acts of Henry Waddington, who failed to make answer to the petition, they stood as confessed by him, and the finding of the jury in these respects could not, therefore, have in any way prejudiced the rights of the defendants. In fact, there was no issue at all as to these questions, for, as stated, they stood as confessed by Henry Waddington's failure to answer.

The third issue, as to whether or not Lane and Adams, before and at the time they paid for the land in question, under their purchase from defendant Henry Waddington, had actual notice of the prior purchase of said land from said Henry Waddington by the plaintiff, was properly submitted, as this was the principal issue in the case.

The question as to the value of the improvements put upon the land by plaintiff between May 27, 1902, and June 11, 1903, should not have been sumitted because not an issue between the parties in interest in this litigation; but as this matter was entirely ignored in the decree, it is not prejudicial error. In cases of this character the trial court is authorized to submit such issues to the jury as it may think necessary (sec. 722, R. S. 1899), but it is not required to submit all

the issues, simply because it submits one (Cockrell v. McIntyre, 161 Mo. 59) ; and the submission of matters as to which there is no controversy is just the same as if they had not been submitted at all, and the finding of the jury upon the one issue properly submitted will not be affected by the improper submission of other questions.

It is claimed by appellants, however, that the court erred in admitting evidence of the said improvements, as the contract between plaintiff and Henry Waddington was not of record, and the improvements made by plaintiff during 1902 and up to March, 1903, were while plaintiff was occupying the land as a tenant of Henry Waddington, and his possession was the possession of his landlord, and such evidence was, therefore, inadmissible for the purpose of showing acts of ownership. But this being a suit in equity, and the verdict of the jury on the third issue, or question of notice, being merely advisory, this court will not pass upon rulings of the chancellor upon the admission or rejection of evidence. The chancellor may strike out all or any part of the evidence, but the appellate court will review the evidence contained in the record, determine what is competent and make its own conclusions. [Sheridan v. Nation, 159 Mo. 27; Edwards v. Latimer, 183 Mo. 610; Morrison v. Turnbaugh, 192 Mo. 427.] In the case last cited it is said: "Nevertheless, coming back to our case, as all the evidence is before us, our duty is to consider the decree from the standpoint of whether or not it is right and founded on competent proof, regardless of questions relating to mere admissibility of evidence. [Rice v. Shipley, 159 Mo. l. c. 405.] For in an equity case, such as we consider this, it is not necessary here to pass on rulings, *nisi,* on the admission or rejection of evidence. [Sheridan v. Nation, *ibid,* 27.] But this does not mean that the chancellor should not rule on evidence when its admission is challenged, nor does it

mean that if the case required it, we would not reverse and remand because of reversible error in allowing proof.'' Nor can the decision of the case be affected by an error of the court in its instructions to the jury. In the case of Hall v. Harris, 145 Mo. l. c. 620, GANTT, P. J., speaking for this court with reference to certain instructions given the jury by the trial court, said: ''Its final decree may be entirely correct notwithstanding those instructions, and as the decree is in no sense dependent upon their correctness, no error can be predicated upon them, and it becomes unnecessary to examine them critically;'' citing Hunter v. Miller, 36 Mo. 143; Moore v. Wingate, 53 Mo. 398.

The court should have predicated its decree upon the allegations in the petition as to Henry Waddington, by whose failure to deny them they stood confessed, and upon the finding of the jury upon the question as to whether or not defendants Lane and Adams purchased from Henry Waddington with notice of the fact that plaintiff had theretofore purchased the land from said Henry Waddington, or of such facts as would have put an ordinarily prudent man, in such circumstances, upon inquiry with respect thereto.

While the court adopted the finding of the jury upon all the issues submitted to them, it made in addition a finding of facts of its own motion which embraced a number of issues not submitted to the jury. The court had the right under the statute (sec. 692, R. S. 1899) to take the opinion of the jury upon any specific question of fact involved in the case, and to pass upon other facts in issue upon the evidence before it, and to make its own findings upon all the facts. The decree recites: ''And the court does hereby adopt the said findings of the jury heretofore made by their verdict, and doth find,'' etc.

It is well-settled law in this State that the findings of the chancellor will be deferred to, unless it appear manifest that he disregarded the evidence.

[Sharpe v. McPike, 62 Mo. 300; Hodges v. Black, 76 Mo. 537; Royle v. Jones, 78 Mo. 403; Snell v. Harrison, 83 Mo. 651.] After a careful examination of the evidence disclosed by the record in this case, we are unable to see any sufficient reason to interfere with the finding of the chancellor. The controlling question in the case is as to whether or not Lane and Adams, before and at the time they paid for the land in question, under their purchase of the same from Henry Waddington, had actual notice of a prior purchase of said land from said Henry Waddington by the plaintiff, and both the jury and the chancellor found that they did have such notice. All that was necessary for the plaintiff to show upon this question was that they had notice of such facts and circumstances as would have put an ordinarily prudent and cautious person upon inquiry regarding said prior sale. The evidence upon this question was conflicting. "There was evidence . . . . consisting of facts and circumstances bearing with greater or less weight upon the questions involved, and while there was evidence also (but for the most part from parties in interest) tending to show that the defendants, or some of them at least, acted in good faith in their dealings with the lands in question, yet, as the chancellor with the witnesses personally present before him had better opportunities to weigh and determine all the evidence, its credibility, and value, and as his conclusion therein is not manifestly erroneous, we do not see that we would be authorized to reverse or disturb his findings thereon." [Snell v. Harrison, 83 Mo. l. c. 659.]

We are unable to see any error in the record which would justify a reversal of the judgment, and we, therefore, affirm the same.

All concur.