## SHAFFER, Appellant, v. DETIE et al.

**Division One, November 22, 1905.**

1. **APPELLATE PRACTICE: Printed Abstract: Waiver.** The failure of respondents to insist on an abstract setting "forth so much of the record as is necessary to a full understanding of all the questions presented to this court for decision," will not be considered as a waiver of the right of the court to such an abstract.

2. ——: ——: **Reference to Transcript.** A printed abstract which points to the complete manuscript transcript for some of the record facts deemed important, is no such abstract as the rules and the law require. Where such an abstract is presented, the court will not hunt through the transcript for the facts in judgment, but will determine the case from the facts found in the abstract.

3. **PRACTICE: Finding of Facts After Judgment.** A special finding of facts, asked for and filed after decree is entered, cannot be used to impeach the decree. Such finding must precede the judgment.

4. ——: ——: **Equity Case.** A special finding of facts by the trial court in an equity case is not binding on the appellate court. Sec. 695, R. S. 1899, relating to special finding of facts by the trial court, was not intended to have and does not have any effect on the power or duty of the appellate court in equity cases.

5. ——: ——: ——: **Contained in Decree.** The decree in an equity case, containing a special finding of facts, is for review on appeal.

6. ——: **Equity Case: Instructions.** Instructions fill no office in the trial of an equity case and should not be given and if given, will, on appeal, be treated as of no moment. And this is the practice, though the suit as begun was one at law, and was by the interposition of an equitable defense, accompanied by a prayer for affirmative relief, transmuted into a suit in equity.

7. **CONVEYANCE: Minor's Deed: By Whom Voidable.** A deed by a minor is not void, but only voidable; and is effective or non-effective, as he may elect to affirm or disaffirm it after he attains his legal majority. But disaffirmance is a personal privilege to be exercised by him, or, in case of his death or insanity, by his heirs or personal representative; it cannot be exercised by strangers to the title or to the transaction.

8. ——: ——: **Admitted in Evidence.** Where defendants in ejectment claimed that a minor, through whose deed plaintiff claims title, had no title because prior to his deed his father had conveyed the land to their grantor, and because, even if he had a title, he had lost it by limitations, and the chancellor so found, it was not reversible error to admit evidence offered by defendants showing that the minor at the time he made the deed was only fifteen years old and the consideration so small as to be fraudulent. The evidence should not have been admitted, for the question of fraud had no place in the case, but in face of the court's refusal to find that the deed was void, it was not prejudicial error.

9. **APPELLATE PRACTICE: No Objection At Trial.** The abstract recites in reference to the offer of a deed in evidence: "Objected to; reason to be inserted later," and the "reason" is found only in the brief. *Held,* that the reason should have been given to the trial court, and the appellate court will not convict the trial court of error for not excluding the deed when no reason was given at the trial for its exclusion.

10. **CONVEYANCE: By Parol: Equitable Title: Ejectment.** When the purchaser of land bargains for it, and pays for it, and is by the seller put into possession and holds possession, an equitable title is created in the purchaser, and the naked legal title, left in the seller who makes no deed to the purchaser, is subordinate to the equitable title and will not support ejectment. The equitable title alone will not support ejectment, for that is strictly a legal action, but the holder of the naked legal title, where the equitable title is interposed as a defense, cannot maintain ejectment.

11. ——: ——: ——: **Notice.** Visible possession of real estate, with improvements, cultivation, etc., are as valid in imparting notice of a claim of title as the record of a deed. And a claimant who has such notice of possession by the purchaser who obtained no deed, cannot contend that he was an innocent purchaser simply because the record showed no adverse title.

12. **LIMITATIONS: Color of Title.** A sale of land under order of the probate court and a deed by the public administrator is color of title, and one who takes possession thereunder and continues in possession for the statutory period of limitation is the owner of the entire tract described in the deed.

13. ———: Against Minor. Where the Statute of Limitations has once begun to run against the owner of land, it will continue to run against his minor children upon descent cast.

Appeal from New Madrid Circuit Court.—*Hon. H. C. Riley,* Judge.

AFFIRMED.

*Scobey & Walton* for appellant.

(1) The defendants, on cross-examination of the plaintiff, sought to attack plaintiff's title, and a conveyance, by showing that Newton C. Morehead was a minor at the time he executed a certain deed to Scobey, in plaintiff's title. The plaintiff objected to the question of the minority of Newton C. Morehead, as the minority of one of the grantors to plaintiff's title could not be any defense to the defendants, who are third parties to the conveyance. The court overruled the objection, to which plaintiff duly excepted, and the ruling of the court in so doing is assigned as one of the errors of the trial court. (a) The deed of the minor, Morehead, was only voidable and not void. Tiedeman on Real Property, sec. 792; Clark on Contracts, sec. 112; Lawson on Contracts, sec. 130; Ridgway v. Hurbert, 150 Mo. 606; Shipley v. Bunn, 125 Mo. 445; Craig v. Van Bebber, 100 Mo. 584; Singer Mfg. Co. v. Lamb, 81 Mo. 221; Huth v. Marine Ry. & Dock Co., 58 Mo. 202; Baker v. Kennett, 5 Mo. 82; Kearney v. Vaughn, 50 Mo. 284; Furgurson v. Bell's Admr., 18 Mo. 347; Downing v. Stone, 47 Mo. App. 144. (b) One who is not a party to a sale can not attack it on account of the minority of the vendor. Hill v. Taylor, 125 Mo. 331; Griffith v. Schwenderman, 27 Mo. 412; Ward v. Steam Boat Little Red, 8 Mo. 358. (2) The court admitted in evidence, over the objection of plaintiff, a deed from J. C. Morehead and wife to John McLure, when J. C. Morehead

had no title in and to said land and consequently he could not convey any title to the said premises, and John McLure acquired no title to the land by virtue of said deed of conveyance, and therefore said deed should have been excluded. (a) Because J. C. Morehead took no legal title from Stephen W. Morehead in the pretended sale. Sale of real estate, in this State, must be made by deed and not by parol. Tiedeman on Real Prop., secs. 791, 799, 800; Rodgers v. Vanderburg, 168 Mo. 430; Alt v. Fullerton, 151 Mo. 598; Robinson v. Claggett, 149 Mo. 153; Turner v. Williams, 76 Mo. 617; Picket v. Jones, 63 Mo. 195; Chapman v. Templeton, 53 Mo. 463. (b) J. C. Morehead did not acquire any legal title to the land in controversy. Tiedeman on Real Property, sec. 799; Robinson v. Claggett, supra; Turner v. Williams, supra; Chapman v. Templeton, supra; McKinney v. Settles, 31 Mo. 541. (c) Plaintiff had no notice of the pretended unrecorded sale from Stephen W. to J. C. Morehead, and it was a nullity as against the plaintiff. Ebersole v. Rankin, 105 Mo. 488.

*Oliver & Oliver* for respondents.

(1) The appellant here holds through a pretended deed executed by Newton C. Morehead—a boy of fifteen years—to Mr. Scobey, for a consideration of thirty dollars. Mr. Scobey on the same day pretends to sell the same land to this appellant for a consideration of one hundred and fifty dollars. Such a showing renders the contract of the minor void because manifestly prejudicial to the infant's interest. Where this is so, the contract is not voidable but void. Lawson on Contracts, sec. 130. (2) (a) Respondents have, however, not only a perfect defense but they have a perfect title to the land in question. They hold it by the Statute of Limitations. They also hold it by direct purchase. Bank v. Evans, 51 Mo. 335; Shipley v. Conway, 52 Mo.

559; Brown v. Railroad, 101 Mo. 448; Allen v. Mansfield, 108 Mo. 343. (b) It is true respondents have not produced the deed from Stephen W. Morehead to J. C. Morehead, but we have produced Mr. Pikey, who was the brother-in-law of the grantor and the son-in-law of the grantee, who swears he was present when the sale was made, knows that the consideration was paid, knows that the grantee was put into possession of the place, knows that the grantee accepted the consideration in satisfaction of the sale, and that a year or so afterwards this witness rented the same land from J. C. Morehead the grantee. Where this state of facts is shown this court has said that the sale was consummated notwithstanding no deed passed from the grantor to the grantee. Ridgeway v. Holladay, 59 Mo. 452; Neef v. Suly, 49 Mo. 209. (3) The Statute of Limitations having commenced to run against Stephen W. Morehead in 1876 or 1877 when J. C Morehead went into the possession of this land, it would continue to run against the said Stephen and his heirs after his death. Rogers v. Brown, 61 Mo. 187.

LAMM, J.—Ejectment for the southeast quarter of the southwest quarter of section 17, township 21, range 13 in New Madrid county. Ouster laid as of January 1, 1901. Petition in common form. Detie is alleged to be in possession of the *locus* as tenant of his co-defendants, the DeLisles.

By joint answer, Detie's possession as tenant of the DeLisles is admitted, and an adverse, visible and continuous possession under claim of right and color of title, since 1878, is pleaded in the defendants and their grantors, thereby invoking the Statute of Limitations as a defense.

By way of matter *in pais,* constituting an equitable defense and upon which affirmative equitable relief is prayed by defendants, it is further alleged in sub-

stance that plaintiff's claim is based on a deed from Newton Morehead—a minor son of Stephen Morehead, deceased. That Stephen Morehead was a son of J. C. Morehead. That Stephen sold said land to his father in the seventies and received the full purchase price from him and then and there put his said father in possession and that by a chain of title, specifically pleaded in the answer, the ownership and possession of said premises had come down from said J. C. Morehead through mesne conveyances to the DeLisles. That the deed from Stephen to his father at the time the sale was consummated was either made and lost before record, or by neglect was not made at all, and relief is prayed that the title of Stephen Morehead be decreed to have passed by said sale from Stephen to J. C. Morehead and for such further relief as to the court may seem right and equitable. The answer also denied all the allegations of the petition not admitted.

Issue was joined by reply to the new matter in the answer and the cause heard by the court, neither party requesting a jury on any issue.

Plaintiff asked and was refused certain instructions and saved his exceptions. Plaintiff was given certain instructions and defendants asked none.

By its decree the court found the facts specifically as alleged in the answer and on March 22, 1902, entered a decree in favor of defendants and granted the affirmative relief prayed by them. Two days after this decree was entered, to-wit, on March 24th, plaintiff filed a written request for a finding of facts which request was complied with and a finding made and filed which, in some particulars, is challenged here by plaintiff.

After an unavailing motion for a new trial, plaintiff perfected his appeal and the cause is now pending in this court on a complete manuscript transcript and a meager abstract of record furnished by appellant, which in set terms points us to the manuscript trans-

cript for some of the record facts deemed important by him. Appellant's abstract is supplemented by another furnished by respondents, equally scanty, and which also refers us to the same transcript for certain record facts. Of this condition of things, it may be said that while this court has been, of set purpose, conservative and bland in its interpretation and application of its printed rules, yet it is an unbending rule, the underlying wisdom of which cannot be gainsaid, that even in cases where a complete manuscript transcript is filed here, a printed, paged and indexed abstract must also be furnished us (and served on the respondent) setting "forth so much of the record as is necessary to a full understanding of all the questions presented to this court for decision." [Rule 13.] The convenience of litigants and of the members of this court in the dispatch of business requires this to be done, and we have uniformly refused to go behind unchallenged abstracts and to manuscript transcripts to hunt, as with a lighted candle in hand, to see if peradventure we may spy out the facts and issues pressed upon us for consideration. Such seems the moral to be drawn (and needing heed by the profession) from the frequent dismissal of causes for failure to obey this rule. [Manuel v. Railroad, 186 Mo. 499; Whitehead v. Railroad, 176 Mo. 475; Ramsey v. Shannon, 140 Mo. 281; Halstead v. Stone, 147 Mo. 649; Ely v. Coontz, 167 Mo. 371.] It is true in this case respondents, as was their privilege, seem willing to forego their right to such abstract, but manifestly respondents, however suave, are not at liberty to forego or waive the right of this court to such abstract, and we will presume the printed abstracts import not only verity but contain *all* the verity needful to consider.

Attending, then, alone to the printed abstracts, the case made on the facts is as follows:

Stephen Morehead is conceded to be the common source of title and therefore no attention need be given to prior conveyances.

On behalf of appellant it was shown that Stephen Morehead died in 1887, divorced from his wife, also now dead. That they left surviving them three children, of whom an only son, Newton Morehead, is alive. Having made a *prima facie* showing of descent cast upon Newton Morehead, appellant next produced in evidence two deeds, one from Newton Morehead to Scobey dated August 25th, 1900, consideration thirty dollars, and one of the same date from said Scobey to appellant, consideration one hundred and twenty-five dollars, and rested.

While appellant was putting in his case and when on the stand in person, it was sought by cross-examination to show by him that Newton Morehead was a minor and that appellant knew that fact at the time Scobey took a deed from the lad and at the time he accepted a conveyance from Scobey. To this line of cross-examination appellant's counsel objected, because the minority of a grantor in a deed relied on as a link in a chain of title is no defense to an action of ejectment. The objection was overruled and appellant excepted.

On further cross-examination it appeared that appellant knew young Morehead and was with Scobey on the day he got the deed from the boy for thirty dollars and that on the same day he, appellant, took a deed from Scobey for one hundred and twenty-five dollars. On this showing of facts respondents make a point to the effect that the deed from the minor son of Stephen Morehead to Scobey is void, *ergo,* they say, Scobey took nothing by that grant and could convey nothing to appellant.

The record title relied on by respondents and produced in evidence, so far as material, is as follows: (1) a warranty deed from J. C. Morehead and wife to John McLure dated September 30, 1878, and duly recorded. This deed was objected to, as will presently appear. (2) Probate proceedings showing the land inventoried as the property of said McLure, proceedings for the

sale of the land as his property to pay debts, a report of sale with its approval, followed by a deed from the administrator of said McLure to Edward and Alphonso DeLisle, dated February 15, 1883, and duly recorded; (3) a deed from the DeLisles to one Souders dated December 15, 1886, and duly recorded; (4) a warranty deed from Souders back to the DeLisles dated July 22, 1892, duly recorded. This deed was also objected to, as will presently appear.

Supplementing their documentary evidence, respondents proved by sundry witnesses that possession had been given under each one of these deeds and was held under a claim of ownership, adversely, visibly and continuously from 1878 down to the day of the trial by the DeLisles and the several grantors and grantees in conveyances in their chain of title. That by them improvements were made upon the land, that it was, during some of the time, partly under fence and, as we understand the record, at other times wholly under fence and that fifteen or twenty acres of it is in cultivation and that at least some of it has been in cultivation by said respective claimants continuously since 1878.

To establish the equitable matter pleaded in the answer, respondents produced evidence tending to prove that Stephen Morehead and his wife separated, and thereupon Stephen sold the land to his father for a mule and a yoke of oxen, then and there received in hand, and, as a part of said sale, delivered possession of the land to his father, who thereafter held exclusive possession in person and by tenants, and who afterwards conveyed it to McLure by warranty deed as aforesaid. It was shown that Stephen Morehead lived for ten years or so after his father had sold this land to said McLure and transferred the possession to him, and testimony was educed tending to show that he knew his father, through tenants and in person, took possession of and dealt with it as owner, and knew that McLure and the purchasers at the administrator's

191 Sup—25

sale took and held possession and exercised full domination over the land.

No evidence was introduced on the part of respondents tending to show actual notice on the part of appellant of the foregoing adverse possession or of any of the conveyances in respondents' chain of title. In fact, appellant put himself in the situation of relying on the statement of Scobey (not shown) and did not examine the records.

It was further testified to on one side, and denied on the other, that one Cartee, an uncle of Newton Morehead by marriage, during the time the DeLisles were in possession of the premises, and in the interest of young Morehead, talked to one of the respondents, Edward DeLisle, about the land and the claim of the boy and that DeLisle had said that Cartee should be, or requested that Cartee be, appointed guardian for the child and that he, DeLisle, "would settle the trouble."

There was also evidence that at the time Souders claimed to own the land and was in possession and after he had fenced the farm, dug a well, put a house on it and "deadened off a good deal," and before he transferred it back to the DeLisles, Stephen Morehead came to him and said the land was his. Whereat Souders claimed it and said he had bought it from the DeLisles. It seems that Souders became uneasy over this verbal notice from Stephen Morehead and finally sold and conveyed the land back to the DeLisles. This is all the evidence abstracted tending to show that Stephen Morehead ever laid any claim to this land after the year 1878.

Any other record facts shown by the abstract, material to the proper disposition of the case, will appear in the course of the opinion.

On such record, can and ought the decree be upheld? We think so, for the following reasons:

1. All questions raised by appellant relating to

the special finding of facts made and filed by the court
may be excluded from our consideration, because a de-
cree, once entered, is not subject to such illogical and
belated impeachment as might arise from a finding of
facts made subsequent thereto.   It will be seen that
the request for a finding of facts was delayed for two
days after the decree was entered.   Now, a judgment
or decree is the conclusion of the court deduced from
facts believed to be established and found to exist
simultaneously with or before the decree or judgment
—a product of the right application of correct legal
principles to such facts—or, in other words, "a lawful
sequence of the findings of law and fact as required by
said section" (sec. 695, R. S. 1899); "and it necessari-
ly follows," said GANTT, J., speaking to the point,
"that the request for and such findings must *precede*
the judgment."    [Hamilton v. Armstrong, 120 Mo. 1.
c. 614; see, also, Loewen v. Forsee, 137 Mo. 1. c. 38-9;
Moberly v. Trenton, 181 Mo. 1. c. 647; Butts v. Ruby,
85 Mo. App. 405; Bank v. Lumber Co., 102 Mo. App.
75.]   Of Bank v. Lumber Co., it may be said, in pass-
ing, that the request for a finding of facts came after
the judgment was announced, but the finding was made
and filed on the same day the judgment was entered
which, the court said, "in legal contemplation was at
the rendition of judgment and in compliance with the
purposes of the statute," that is to say, the law will not
split up a day; a day is in the eye of the law *punctum
temporis,* a point of time, and the request and finding
became, hence, in legal contemplation coincident with
the delivery of judgment.

However, the point in hand is in nowise decisive
or controlling, because this is an equity case, as will
presently be seen, and it has been held that section 695,
*supra,* relating to special finding of facts by the trial
court and on request, "was not intended to have and
did not have any effect on the power or duty of this
court in equity cases."   [Fitzpatrick v. Weber, 168

Mo. 1. c. 572.] To the same effect is Blount v. Spratt, 113 Mo. 48. And because, further, the decree itself makes special findings of fact and that decree is here for our review.

2. Appellant contends that certain instructions were improperly refused him by the trial court. Is his contention tenable? We think not. The question of the correctness of the denied instructions must in this instance merge into a larger question demanding priority of consideration, viz., was appellant entitled to any instructions at all? If not, then a consideration of the *form* of the instructions disallowed is a mere will-o'-the-wisp dancing to one side and seducing the judicial mind afield from the path of legitimate inquiry.

The code having allowed legal as well as equitable defenses to be interposed in a law case (R. S. 1899, sec. 605), the courts have established a working theory for such procedure by treating a suit at law in which an equitable defense is interposed, accompanied by a prayer for affirmative equitable relief, as a case in equity, triable to a chancellor. [Martin v. Turnbaugh, 153 Mo. 172; Wendover v. Baker, 121 Mo. 273; Kostuba v. Miller, 137 Mo. 161; Swope v. Weller, 119 Mo. 556.] The case at bar, then, became a case in equity, and it is elementary that instructions fill no office in the trial of an equity case and should not be given, or, if given, will be treated as of no account. [Wendover v. Baker, supra; McCollum v. Boughton, 132 Mo. 601; Hall v. Harris, 145 Mo. 614; Freeman v. Wilkerson, 50 Mo. 554.] Apellant's contention that error may be assigned of the refusal of instructions is, therefore, disallowed and all questions predicated of such refusal are put away from us as by-matter.

3. Appellant assigns error on the admission of evidence tending to show that Newton Morehead was a minor at the date of his deed to Scobey. On the other hand respondents contend that it is apparent, from the facts proved, that an unfair advantage was taken of

the minor, a 15-year old boy, in that his deed was made, in effect, for a nominal consideration, and that Scobey, having taken the minor's title, turned instantly about and conveyed it for a much larger sum to appellant, and that this condition of things rendered the deed *ipso facto* void and inoperative as a grant. Now, it may be conceded to appellant that the deed of a minor is not void, but only voidable; for such is the law. The policy of the law is to make the conveyance of a minor effective or non-effective, as a minor grantor may elect to affirm or disaffirm when he attains the mature judgment of full age; and all persons, whether innocent purchasers or not, must deal with a minor's title to real estate subject to this privilege, since his title passes lame and halt with an infirmity, of which the world at large at its peril must take notice. But this is a personal privilege to be exercised by him, or in case of his death, or being *non compos,* by his heirs or personal representatives; so that, the mantle of privilege to object to such deed does not fall upon the shoulders of strangers to the transaction, and least of all upon one holding and asserting a hostile title, as here. [Tyler on Inf. & Cov. (2 Ed.), sec. 19; 1 Dev. on Deeds (2 Ed.), sec. 86; Lawson on Con. (2 Ed.), sec. 129, and *post*; Ward v. Steamboat, 8 Mo. 358; Singer Mfg. Co. v. Lamb, 81 Mo. 221; Hill v. Taylor, 125 Mo. 331; Shipley v. Bunn, 125 Mo. 445.]

Conceding, *arguendo,* that in an extreme case the doctrine of some of the earlier cases would be re-asserted and that a deed from an infant of tender years obtained from him through covin, or whereby he had parted with a valuable patrimony for a bagatelle, would, in his interest, be treated as void and spewed out of the mouth of Justice, whenever and wherever presented, yet such case is not this case. Here enemies to the infant's title seek to crawl under the cloak of the infant's privilege to defeat his grant—a droll and intolerable situation—not only so, but respondents must

not blow hot and blow cold.  Their theory is and was
that the infant had no title, that he had lost his title
by the acts of his ancestor and by the flux of time—in
fine, that respondents held the title, at least in equity,
and this theory the court, *nisi*, allowed.  In such condi-
tion of things respondents should not be permitted to
suggest that the infant was defrauded or that his title
passed for an inadequate consideration, since, if he
have no title whatever, the consideration is immaterial
and fraud impossible.  Out of nothing, nothing can
come.

The objection of appellant to this line of inquiry
should have been sustained, but the admission of the
evidence was not prejudicial error.  The deed from the
infant to Scobey was not rejected as the result of the
testimony, nor did the court in its decree adjudge that
such deed was void, and thus allow the case to ride off
on that theory; so that, appellant had full benefit of
the conveyance and the preliminary inquiry permitted
by the court worked appellant no ill in the end.

4. . It is claimed by appellant in his assignment of
errors, as follows:

"The court erred in admitting evidence of wit-
nesses Pikey, Huffstetter and Griffeth to impeach one
A. J. Cartee, who had testified by deposition,  as the
witnesses had not known the said Cartee, for from fif-
teen to twenty years, and did not know him in the coun-
try in which he resided at the time of the trial, at the
time the deposition was taken or even the community in
which he resided for the last several years."  And such
point is pressed in apellant's brief as reversible error.

We have not been able to put our  finger on any
such matter preserved in appellant's abstract. No such
evidence and no objection as above are noted in his ab-
stract of the evidence of Pikey and no evidence what-
ever of Huffstetter and Griffeth is abstracted.  Turn-
ing to respondents' abstract, we find no evidence ab-
stracted from Huffstetter and Griffeth, but  Pikey's

testimony is given in a condensed form. An examination of this testimony and of the objections discloses no error in the admission of Pikey's testimony, and, as said, we are precluded by our rules from exploring the manuscript transcript where the matter struck at may lie concealed. This assignment of error we are constrained also to rule against appellant, however meritorious as an academic proposition it may be.

5. Appellant further insists that the Souders deed of July 22, 1892, back to the DeLisles, should have been excluded. No ground appears in the abstract addressed to the trial court for the exclusion of this deed. The abstract shows as follows: "Objected to by plaintiff; *reason to be inserted later.*" The "reason . . . inserted later." appears never to have been addressed to the trial court, but is inserted in an assignment of errors and a brief addressed alone to this court. This will not do. The trial court may not be convicted of error for not excluding a deed when no reason was given for its exclusion. The trial court is presumably a court of reason and as much entitled to the reasons for an objection as this court, and we ought not to consider grounds not presented and weighed and passed on there, and we have uniformly refused so to do. Appellant having postponed the insertion of reasons when and where the door was open for their insertion, his postponement must be taken as a *sine die* adjournment of the matter for all purposes of appellate practice.

6. The disposition of the foregoing contentions brings us to the marrow of the case as uncovered by the statement of facts. The decree, as we construe it, allowed (1) respondents' defense of the Statute of Limitations, allowed (2) their defense of an equitable title superior to appellant's naked legal title, and (3) went farther and found as follows: "The court further finds that all the right, title, claim and interest that Stephen W. Morehead once had in and to said lands passed from him and to J. C. Morehead, prior to the

30th day of September, 1878, and that the defendants have acquired, by their purchase and those under whom they claim, all the right, title, claim and interest, which the said Stephen Morehead conveyed to his father, J. C. Morehead, and that plaintiff has no right, title, claim or interest in and to said lands.''

The remaining contentions of appellant may be treated together and formulated, as we understand his brief, thus: (a) the deed from J. C. Morehead to Mc-Lure should have been excluded. It was objected to ''because no title shown to be in J. C. Morehead,'' further amplified into the insistence that J. C. Morehead got no legal title by his transaction with his son and hence conveyed none to McLure. (b) Appellant was a subsequent innocent purchaser and having no actual notice of the bargain and sale and transfer of possession between J. C. Morehead and Stephen, that transaction, resting in parol, is inoperative as to him and the oral proof thereof, duly objected to, should have been excluded. (c) The Statute of Limitations has not run, because (1) the possession was not adverse and because (2) there was no color of title and the actual possession by claimants, the *pedis possessio,* was not of the whole tract.

It may be conceded to appellant that the legal title to land in Missouri will not pass by parol. [Chapman v. Templeton, 53 Mo. 463.] But such concession does not help appellant because respondents do not rely on a legal title passing by the transaction between the Moreheads, father and son. Their contention is that when the father bargained for the land, paid for it, and under his purchase was put into and held possession, all of which abundantly appears from the evidence, an equitable title was created in the father and that the naked legal title left in Stephen Morehead was subordinate thereto and would not support ejectment, and such is the law. [Tibeau v. Tibeau, 19 Mo. 78; Sebree v. Patterson, 92 Mo. l. c. 458.] The most that can be

said for the legal title held by Stephen is that he was
seized to his father's use. [Neef v. Seely, 49 Mo. 209;
Ridgway v. Holliday, 59 Mo. 444.] The learned coun-
sel of appellant confuses, we think, the law applicable
to a plaintiff in an ejectment suit and the law applicable
to the defendant. A plaintiff may not recover in eject-
ment, it being strictly a legal action, on an equitable
title (Ables v. Webb, 186 Mo. l. c. 247), but on principle
and authority the boot is on the other foot with defend-
ant and he may defend on an equitable title. [See au-
thorities aforesaid, and R. S. 1899, sec. 605.]

But it is strenuously urged by appellant that the
proof showed no notice to him; and that he was an in-
nocent purchaser. The record bears ear-marks indicat-
ing all the parties resided in New Madrid county and
hence no question of non-residence is in the case. We
assume appellant's contention is based on the doctrine
that under our registry acts a deed should be recorded
in order to impart notice. But visible possession of
real estate, with acts of dominating control, improve-
ments, the continuous cultivation of the land, etc., are
as potential in imparting notice of a claim of title as the
record of a deed. One may not be allowed to blindfold
himself to the visible indices of ownership, such as
abound in this case, and say that he had no notice. To
this effect has always been the law in Missouri. [Bart-
lett v. Glasscock, 4 Mo. 62; Davis v. Briscoe, 81 Mo.
27.] And such is the general doctrine. [2 Dev. on
Deeds (2 Ed.), secs. 760 and 769.] The possession of J.
C. Morehead was continuously perpetuated down to the
day of trial under the chain of title relied upon by re-
spondents, and it became either actual notice or put ap-
pellant on inquiry and he is impaled on either horn of
the dilemma.

Under this record the Statute of Limitations had
run in favor of respondents. They and those under
whom they held had been in possession, openly, contin-
uously and adversely of a part of the premises, at least,

claiming the whole premises under color of title for over the statutory period. Under the earlier decisions the transaction between the Moreheads, accompanied by possession and improvements, would have created color of title, although there was no written instrument executed purporting to deal with the title. [Rannels v. Rannels, 52 Mo. 108.] Our later decisions defining color of title incline to the view that it has its root in some document dealing with the title, however erroneous or imperfect. [Allen v. Mansfield, 108 Mo. l. c. 348.] The definitions of color of title need not be repeated here, but, under any definition, the deed of the administrator of John McLure to the DeLisles created color of title. [Moss v. Kauffman, 131 Mo. l. c. 431; Quick v. Rufe, 164 Mo. l. c. 412; Hickman v. Link, 97 Mo. 482; see, also, Woodstock Iron Co. v. Roberts, 87 Ala. 436.] There is no pretense that this conveyance and the subsequent conveyances were not *bona fide,* nor is it claimed that respondents, or those under whom they held, were disseizors, trespassers or squatters, hence the law applicable to that class of cases does not apply.

Though Newton Morehead was under disability, yet the statute had begun to run before descent cast, and having once begun to run against his ancestor, Stephen, it is an elementary principle that it will continue to run without interruption. [Pim v. St. Louis, 122 Mo. 654.]

We are of the opinion that all the errors assigned by appellant should be disallowed in a court of conscience. The decree was plainly for the right party and must be affirmed.

All concur.