ALICE M. BLOOD, Respondent, v. SOVEREIGN CAMP WOODMEN OF WORLD, Defendant, IRA A. BLOOD, Interpleader, Appellant.

St. Louis Court of Appeals. Submitted on Briefs April 26, 1909. Opinion filed June 22, 1909.

1. EQUITY: Interpleader's Bill. A proceeding by interplea to determine the ownership of a fund deposited in court is of equitable cognizance.

2. ———: Instructions: Refusal of. An appellate court will not review the action of the trial court in refusing all instructions asked in an equity case.

3. ———: Court: Jury: Issues of Fact. In an equity case, the issues of fact involved are to be tried by the court, but the court may take the verdict of a jury for its guidance, and it is then within the power of the trial or appellate court to adopt or reject that verdict.

4. TRIAL PRACTICE: Burden of Proof: Interplea. In an action on a benefit certificate, by the beneficiary named therein, where the amount of the insurance is paid into court by the association, and another person interpleads for it, alleging that he was made the beneficiary by virtue of an instrument executed by insured, and plaintiff answers said interplea, alleging in the alternative either that insured did not sign said instrument, or if he did sign same, that his signature was procured by undue influence and that it was not the act of a sane man, held, the onus was on the interpleader on every issue involved.

5. UNSOUND MIND: Insurance: Change of Beneficiary. On a review of the evidence, it is held that the act of deceased in making his brother the beneficiary in said certificate, in place of his wife, was not the act of a man in possession of his faculties and in normal mental condition.

6. PLEADING: Execution of Instrument: Denial Under Oath: Statute. Where the execution of an instrument, which is pleaded as a defense, is denied, the denial need not be under oath, if the party denying its execution is not the one alleged to have executed it. Section 746, Revised Statutes 1899, requires only the party charged with the execution of an instrument to deny its execution under oath.

7. ———: Inconsistent Defenses: Pleaded in Alternative: Statute. The averments pleaded in an answer that insured did not execute an assignment of his insurance policy, or, if

he did execute it, was lead thereto by fraud and undue influence, or did it when not of sound mind, are not inconsistent with each other. These defenses may be pleaded in the alternative, as provided by section 626, Revised Statutes 1899.

8. **TRIAL PRACTICE: Inconsistent Defenses: Motion to Elect.** A motion to elect between inconsistent defenses filed when the case is called for trial and after an answer has been filed, comes too late.

9. **WITNESSES: Competency: Other Party Dead: Statute.** Where the holder of a life insurance policy, who is alleged to have executed an instrument, by which a change of beneficiary was made, is dead, the other party to said instrument is not a competent witness in a suit involving its validity, under section 4652, Revised Statutes 1899.

10. **APPELLATE PRACTICE: Equity: Review of Finding.** The finding of a jury adopted by the trial judge in an equity case, while not binding upon the appellate court, is always persuasive.

Appeal from Greene Circuit Court.—*Hon. George E. Pepperdine,* Special Judge.

AFFIRMED.

*Rowell, Clay, Delaney & Delaney* for appellant.

(1) The pleas of plaintiff are inconsistent and she should have been put to her election. *Non est factum* and fraud are inconsistent defenses. Green v. Railroad, 192 Mo. 131; Drolshagen v. Railroad, 186 Mo. 258; Behen v. Transit Co., 186 Mo. 430; Vette v. Evans, 111 Mo. App. 588; Betz v. Telephone Co., 121 Mo. App. 473; Boyd v. Transit Co., 108 Mo. App. 303. (2) Interpleader bottomed his right of recovery upon a written assignment made by deceased. Plaintiff claiming through said deceased, sought to defeat interpleader by pleading and attempting to prove said assignment was not signed by deceased. Plaintiff did not verify her denial. The result of such failure is to admit the genuineness of signature, and interpleader was entitled to judgment on such issue. And no evidence was properly admissible to prove such signature was forged.

Johnson v. Woodmen of World, 119 Mo. App. 98; Stark
v. Hicklin, 112 Mo. App. 419; Weber v. Ancient Order,
104 Mo. App. 129. (3) The insurance policy in ques-
tion was issued by a fraternal organization. Under the
repeated rulings in this State, a change of beneficiary
can be made without the consent of the beneficiary for
the time being. Westerman v. Knights of Pythias, 196
Mo. 670. Therefore, the designation of a beneficiary in
such policy is not a contract between the beneficiary
and the assured, and partakes of none of the elements
of a contract. Therefore, Ira Blood does not fall within
the provisions of section 4652, Revised Statutes 1899,
and is a competent witness to prove the assignment, the
genuineness of the signature and the circumstances sur-
rounding its execution. (4) The record reeks with as-
saults on interpleader—alleged acts and declarations
both before and since the death of C. C. Blood, and the
court held that the death of C. C. Blood sealed the lips
of Ira Blood, interpleader, for all purposes and as to
all matters. This is not the law. Weiermueller v. Scul-
lin, 109 Mo. App. 193; Henry v. Buddecke, 81 Mo. App.
360. (5) The court erred in awarding a trial by jury.
The reply of plaintiff to cross-petition of interpleader
converted the action into an equitable cause. Trust
Co. v. Nathan, 175 Mo. 32; Harrison v. Murphy, 106
Mo. App. 465.

*Frank B. Williams* and *Matthew H. Galt* for re-
spondent.

This is an equity case and the trial here is a trial
*de novo*. The filing of the cross-bill and answer con-
verted this action into one in equity. Trust Co. v. Na-
than, 175 Mo. 42; Harrison v. Murphy, 106 Mo. App.
465; Lavelle v. Balliu, 121 Mo. App. 442. A suit at law
in which an equitable defense is interposed, accompan-
ied by a prayer for affirmative equitable relief, is a
case in equity triable to a chancellor. Shaffer v. Detie,
191 Mo. 388. The mere fact that the chancellor called

a jury and submitted the issues to them does not, of it-
self, constitute error. Bick v. Williams, 181 Mo. 526;
Price v. Reed, 38 Mo. App. 489. The finding or opinion
of the jury is merely advisory in an equity case and the
chancellor is at liberty to wholly disregard it; or he
may adopt it, in which case it becomes his finding, as he
is the ultimate trier of the facts. Waddington v. Lane,
202 Mo. 415; Patterson v. Patterson, 200 Mo. 335; Bank
v. Nichols, 202 Mo. 309; Price v. Reed, 38 Mo. App. 489.
The general finding of the chancellor that the benefici-
ary had never been changed, etc., "as interpleader hath
alleged," was sufficient. Jordan v. Buschmeyer, 97 Mo.
94; Lawless v. Lawless, 47 Mo. App. 529. A finding of
fact is the conclusion of the court drawn from the evi-
dence, not the reasons of the judge. Rausch v. Michel,
192 Mo. 293. The appellate court will defer largely to
the findings of the chancellor. Vogler v. Punch, 205
Mo. 558; Bank v. Nichols, 202 Mo. 309; Lacks v. Butler
Co. Bank, 204 Mo. 455; Phillips v. Trust Co., 113 S. W.
1065; Snell v. Harrison, 83 Mo. 651. In an equity case
the giving or refusal of instructions, the admission or
exclusion of evidence, cannot be assigned as error.
However, interpleader was not a competent witness for
any purpose for which he was offered. Meier v. Thie-
man, 90 Mo. 433; Weiermueller v. Scullin, 203 Mo. 466;
R. S. 1899, sec. 4652. The giving or refusal of instruc-
tions, the admission or exclusion of evidence, cannot be
assigned as error in an equity case. Sheridan v. Na-
tion, 159 Mo. 27; Morrison v. Turnbaugh, 192 Mo. 442;
Waddington v. Lane, 202 Mo. 387; Lilly v. Menke, 92
Mo. App. 357; Bouton v. Pippin, 192 Mo. 474. The re-
fusal of instructions asked by interpleader, in the na-
ture of demurrer to the evidence, was not error and can-
not be assigned as error in an equity case. Hailey v.
Simpson, 113 Mo. 345. Plaintiff's alternative pleas,
contained in her cross-answer, conform to the require-

ments of the statute and are properly conceived and pleaded. R. S. 1899, sec. 626; Railroad v. Wyatt (Tenn.), 93 S. W. 601; Allen v. Transit Co., 183 Mo. 424. There is a distinction between consistent defenses and inconsistent defenses. The former should be pleaded in different counts; the latter in the alternative. A motion to elect made at the close of the evidence will reach the former but not the latter. Drolshagen v. Railroad, 186 Mo. 262; Behen v. Transit Co., 186 Mo. 440; Roberts v. Railway, 43 Mo. App. 287; Hendrix v. Calloway, 211 Mo. 558; Ming v. Olster, 195 Mo. 473. An election cannot be compelled between defenses pleaded in the alternative even though they be inconsistent. R. S. 1899, sec. 626. If either alternative is true and is well pleaded it will support the judgment or decree. Beall v. January, 64 Mo. 434; Hewitt v. Truitt, 23 Mo. App. 443; Brownell v. Railroad, 47 Mo. 239; Owens v. Railroad, 58 Mo. 394. Interpleader's attack upon the pleadings was not timely and his motions were properly overruled. Haseltine v. Smith, 154 Mo. 404; Boyd v. Transit Co., 108 Mo. App. 306; Murphy v. Transit Co., 96 Mo. App. 272; R. S. 1899, sec. 602. The court's action in overruling interpleader's motion to elect, to strike and to make more specific cannot be assigned as error—the error, if any, was waived by interpleader when he filed his reply. R. S. 1899, secs. 602, 641; Nelson v. Wallace, 48 Mo. App. 193; Anderson v. Railway, 129 Mo. App. 384; Paddock v. Somes, 102 Mo. 235; Jordan v. Transit, 202 Mo. 427. Plaintiff is not charged to have executed the instrument sued on and this is not a case coming within the provisions of section 746, Revised Statutes 1899. Patton v. Fox, 169 Mo. 105. The court will so construe sections 746 and 626, Revised Statutes 1899, if possible, as to secure their mutual operation and not so as to make one destructive of the other. State ex rel. v. Richardson, 35 Mo. 388; St. Louis v. Lane, 110 Mo. 254.

STATEMENT.—The plaintiff, Alice M. Blood, filed her petition in the circuit court of Greene county, against the Sovereign Camp of the Woodmen of the World, in which petition she avers that on the 12th of January, 1895, the Sovereign Camp issued to Charles C. Blood, then a resident of Springfield, in this State, its beneficiary certificate for the sum of $2,000, the benefit payable at his death to Alice M. Blood, plaintiff herein, designated in said certificate as his wife. Averring that Charles C. Blood, during his lifetime, had paid up all assessments and dues chargeable against him and being in good standing, died on the 16th of April, 1906, the certificate then being in full force; that proofs of the death of Charles C. Blood had been properly executed and forwarded to the officers of the Sovereign Camp; that thereby the sum of $2,000 became due to plaintiff, but that the same had not been paid, although demanded, judgment is prayed for the $2,000 and costs. The defendant Sovereign Camp appeared and answered, admitting all the allegations in the petition except that the certificate set out by plaintiff is a true copy of the benefit certificate held by Charles C. Blood at the time of his death. Setting up the right of a member under the by-laws of the organization to change the designation of the beneficiary, the answer of the Sovereign Camp avers that on the 6th of March, 1906, Charles C. Blood endorsed a request upon the back of the certificate that it be changed from his wife, Alice M. Blood, to his brother, Ira A. Blood. Whereupon a new certificate was issued to him by the Sovereign Camp in which new certificate Ira A. Blood was designated as beneficiary, the new certificate being issued on the 22nd of March, 1906. That the Sovereign Camp had received proper proofs of the death of Charles C. Blood, as having occurred on the 16th of April, 1906, and were about to approve the evidence of death and pay the $2,000 to Ira A. Blood, as the beneficiary named in the last mentioned beneficiary certificate, when they received notice from

plaintiff contesting the validity of the change of beneficiary, averring that when the change was made Charles C. Blood was *non compos mentis,* and that the change was made under undue influence of his brother and was void. Averring its liability under the certificate, and its willingness to pay the amount to whoever is entitled to it, the Sovereign Camp tenders the money into court and asks that the plaintiff and Ira A. Blood be required to interplead. The court directed the $2,000 to be deposited with the clerk and discharged defendant Sovereign Camp with its costs. It was also ordered that Ira A. Blood be served with process, directing him to appear and interplead for the fund. On June 11, 1907, Ira A. Blood appeared and filed his interplea, claiming the money, averring he is the brother of the deceased, Charles C. Blood, and that the certificate of membership was issued to Charles C. Blood on the 12th of January, 1905, by which the $2,000 was payable at the death of Charles to his wife, Alice M. Blood; that in pursuance of the power vested in him so to do, Charles C. Blood, on the 6th of March, 1906, had changed the designation of his beneficiary, surrendered his old certificate and had a new one issued to him for the same amount, payable to Ira A. Blood, therein declared and designated as his brother, and that thereby Charles had cancelled the former certificate; that Charles died on the 16th of April, 1906, that Ira A. Blood is his brother and that he is entitled to the $2,000, which the Sovereign Camp owes him by virtue of the certificate, and denying each and every other allegation in the plaintiff's petition, prays judgment for the sum of $2,000 and for costs.

On June 21, 1907, plaintiff answered this plea; in which answer she sets up that after the issue and delivery of the certificate to Charles C. Blood, in which she was designated as the beneficiary, Charles C. Blood, by reason of an incurable ailment known as Bright's disease, and other diseases, not only became infirm and

helpless in body, but his mind was so enfeebled and impaired as to render him unfit for the transaction of any business and wholly incapable of making a valid change, transfer or assignment of said certificate, and that he remained so until the day of his death. That while he was in this feeble and infirm state of mind and body, the defendant, and certain other parties named became inmates of the household of Charles C. Blood, and, to the exclusion of plaintiff, his wife, and against her will, took full charge and control of the business affairs and of the nursing of said Charles C. Blood, and that Ira A. Blood, gaining the confidence and trust of his brother, fraudulently combined and conspired with the parties named to deprive plaintiff of her rights as the wife of Charles C. Blood and to cheat and defraud her of all rights in his property, among other things to deprive her of the benefits of the certificate so issued on the 12th of January, 1895, in her favor, and that while he was in the enfeebled condition aforesaid, they had induced Charles C. Blood, either through fraud, misrepresentation, covin, deceit and undue influence of said Ira A. Blood and his co-conspirators to sign a paper purporting to be an endorsement of the change of the beneficiary from plaintiff to and in favor of Ira; or, in the alternative, the pretended signature of Charles C. Blood to the change of beneficiary is not in fact and in truth his signature, was not signed by him or any one for him or any one thereto authorized by him, but was affixed by some person unknown to plaintiff and in furtherance of the common design to wrong, cheat and defraud her. Wherefore plaintiff avers that on these state of facts, either said Charles C. Blood was unduly influenced and through fraud, misrepresentation, covin and deceit induced to sign the paper, or, that the pretended signature is not the signature of said Charles C. Blood, the plaintiff averring that she is ignorant whether it is one or the other, but declaring that the alleged new certificate

and change of beneficiary is invalid and void and of no effect, wherefore she asks judgment.

By stipulation of all the parties, the Hon. Geo. E. Pepperdine was selected to act as special judge to try the case, this being done to avoid a change of venue, the circuit judge having disqualified himself. The case was called for trial before Mr. Pepperdine, November 1, 1907, in the circuit court of Greene county, whereupon the interpleader, Ira A. Blood, filed a motion praying the court to compel plaintiff to elect upon which of the alternative pleas set up in her answer she would stand. The motion was overruled, interpleader excepting, whereupon he filed his motion and prayer for judgment on the pleadings, claiming that on the pleadings, the genuineness of the signature of the deceased is admitted, the execution of the assignment or change of beneficiary not being denied under oath by plaintiff, and also claiming that the plea of undue influence is insufficient in law. This was also overruled, interpleader excepting. Both parties announcing ready for trial, a jury appears to have been called, although this does not clearly appear. The interpleader, however, protested against trial by jury and demanded that the cause be tried by the court. This was overruled. No exception appears to have been saved to the action of the court in overruling the protest. The interpleader thereupon requested that he be allowed the opening and closing "as under the pleadings and rulings of the court the burden was upon him." The court acceded to this, whereupon the interpleader prayed the court for judgment on the pleadings on the issue of the genuineness of the signature of Charles C. Blood, deceased, to the assignment under which interpleader claims, and he prayed the court to declare that no evidence was necessary on behalf of the interpleader to prove the genuineness of such assignment, because the answer of plaintiff to the cross-petition of interpleader setting up said assignment was not verified by affidavit. The motion was

overruled, the interpleader excepting, whereupon the interpleader offered in evidence and read the copy of the benefit certificate of date 22nd of March, 1906, in which the interpleader, Ira A. Blood, was designated as the beneficiary. He then offered the original beneficiary certificate of date January 12, 1895, in which Alice M. Blood, plaintiff, was designated as the beneficiary, and also the endorsement on the back thereof, purporting to change from Alice to Ira A. Blood as beneficiary. Objection being made by the plaintiff until proof was made of the genuineness of the signature of Charles C. Blood, the court ruled that the signature being denied, before the document can be admitted in evidence, there must be some testimony of the genuineness of it. Whereupon the interpleader offered portions of depositions of certain witnesses, who testified to their knowledge of the handwriting of Charles C. Blood and that to the best of their knowledge and belief the signature, "Charles C. Blood," on this assignment or change of beneficiary, was in his handwriting. Whereupon the beneficiary certificate of the 12th of January, 1895, with the endorsement on the back of it changing the beneficiary was again offered. The abstract proceeds to state that, "thereupon plaintiff offered evidence in support of her issues," and the interpleader thereupon objected to the introduction of any evidence on her behalf, because under the pleadings and the evidence, the interpleader is entitled to a verdict, and because, under the pleadings, the assignment stood confessed, as issue was not tendered by answer or replication verified by affidavit, and because under the pleadings no evidence is admissible to gainsay the genuineness of the assignment, and because the defenses set up to said assignment are inconsistent, and if not inconsistent, the facts pleaded are so vague and indefinite as not to tender an issue. These objections were overruled by the court and the plaintiff thereupon proceeded with her testimony, which was followed

by the testimony of the interpleader and by testimony in rebuttal by the plaintiff.

It will serve no useful purpose to set out this testimony in detail. It is sufficient to say that there was testimony, pro and con, as to the genuineness of the signature of Charles C. Blood affixed to the endorsement changing the beneficiary. There was also testimony as to the condition of mind of Charles C. Blood at the time he made the change and immediately preceding his death, and as to his character, his relations with his family, etc. There was evidence tending to show that Charles C. Blood was married at Biddeford, Me., sometime prior to 1883, to the plaintiff, Alice M. Blood, and that they had removed from there to Springfield, Mo., about 1883. About six months before his death Charles C. Blood went to California on account of failing health. There is evidence in the case tending to prove that while in California, and shortly before his death, Charles C. Blood had denied the marriage, but the evidence is overwhelming that from the date of the arrival of the parties at Springfield in 1883, he and plaintiff had lived together as husband and wife, had been recognized by their friends and associates as occupying that relation to each other; that Charles C. Blood had invariably spoken of plaintiff as his wife, and that until he made a declaration to the contrary, in California and very shortly before his death, as it is claimed by a witness on behalf of the interpleader, a doctor who attended Charles C. Blood in his last illness being the principal witness to this effect, no question had ever been raised by him or any one else as to the fact of the marriage. No children were ever born of the marriage, but a daughter of Mrs. Blood by a former marriage had lived with them and had been raised as a daughter all the years of their residence in Springfield and she accompanied her mother and father to California. There was also a boy named Charlie and a little girl called "Tootsie," the former fifteen years of age and the latter five

years, both going by the name of Blood, but who were apparently not children by legal adoption. The testimony is overwhelming to the effect that Charles C. Blood was a man of good habits, of few words, of fine character and very fond of his family and that they were devoted to him. He was a traveling salesman and made trips throughout southwest Missouri. He treated Ida, the daughter of his wife, as his own daughter, dressed her well, educated her, was very affectionate in his treatment of her and, as one of the witnesses said, "he was always lovely to Mrs. Blood;" she was a fine housekeeper, "had never lived by a better one and had lived by several," said the witness; was a very devoted woman to her home ever since she had known the family, and this witness testified that she had seen Mr. and Mrs. Blood very much together. In point of fact the testimony of the witnesses, residents of Springfield and among the well-known and reputable citizens of that city, was all to this effect, and tended to prove that plaintiff was a very active charity worker at Springfield. When about to go to California on account of his health in the latter part of 1905, Charles C. Blood, according to one of the witnesses, expressed much regret at having to move. He said he was very sorry to go; that his friends were in Springfield and his family's friends were there, but that on the consideration that it might improve his health he intended to go, but disliked very much to take his family among strangers; that if anything happened to him and he should not live, his family would be left among strangers and he would regret that very much. When he went to California, some six months before his death, he was a very sick man. It was in evidence on the part of the interpleader, that two of his brothers and a sister had joined him there, one brother living there, the brother Ira, the interpleader, and sister coming out, on hearing of his illness, from their home in Massachusetts. According to the testimony introduced on the part of the interpleader, there was

a good deal of bad feeling and dissension between Mrs. Blood and her daughter on one side and these relatives on the other, and finally the daughter came back to Missouri and very shortly afterwards her father died, having by a will and codicil to that will, which he made, practically placed all of his affairs and property in the hands of the interpleader, committing to his uncontrolled discretion all provisions for his wife and family, and also assigning to him absolutely, as it is claimed, the certificate of membership in controversy. The will, naming the interpleader as executor, left to him all the estate, in trust, to collect and receive the rents and profits and pay the same to Alice and Charles A., "at such times and in such amounts as shall to my said executor seem best for their proper support and maintenance during the terms of their natural lives," and upon the death of said Alice and Charles, all of the estate to go to and be distributed among the testator's nearest blood relatives, share and share alike. The will is dated February 17, 1906. In a codicil dated March 30, 1906, he declares that Charles A. Blood is neither his own son nor his adopted son nor any blood relation of his; that in the event that Charles shall develop bad habits or become idle or worthless or in the best judgment of his executor, Ira, shall become no longer worthy of his bounty, that said executor shall either diminish or discontinue the payment to him of any part of the rents and profits of his estate, "having perfect confidence in my said executor, Ira A. Blood, I leave it entirely discretionary with him whether to diminish or cease altogether said payments to said Charles A. Blood." By another item of this codicil, it is set out that should the trust created by his last will and testament in behalf of "Allie" and Charles Blood fail or be declared by any court to be illegal and void, "then and in that event I give, devise and bequeath unto said Allie Blood whatever portion of my said estate *she might prove herself entitled to receive under the law in the event of my having died intestate.* All the rest,

residue and remainder of my said estate I give, devise and bequeath to my brother and sister share and share alike." "Allie" is Mrs. Alice Blood, the plaintiff. He confirms the appointment of his brother Ira as executor, without bond.

In the preamble to the will, after stating that testator is over the age of eighteen years, and of sound and disposing mind and memory, it is recited, "and not acting under undue influence, fraud, menace or duress of any kind or character whatsoever, do make, publish and declare this to be my last will," etc.

The will and the codicils were offered and read in evidence by the interpleader, who also read the deposition of an attorney named Stearns, who deposed that he had prepared the will and codicil at the request of Charles C. Blood. On cross-examination, he deposed that as he recollected it, Ira A. Blood brought him written directions for the will and codicils, giving in brief outline the disposition Charles C. Blood wanted to make of his property. "This memorandum, as I recollect it, was in the handwriting of Charles C. Blood. I do not know where the memorandum now is and my impression is I destroyed it after drawing up the will. The will was taken up to and discussed with Charles C. Blood and having met with his approval, I no longer kept the memorandum. When I took the will to Mr. Charles Blood, Mr. Ira Blood was present part of the time. He was in and out of the room. My recollection is, that Ira Blood told me what Charles C. Blood wanted to have put in the codicil. After writing of codicil I did not deliver will to Charles C. Blood personally. I do not now recollect whether I gave it to Mr. Ira Blood or to one of the doctors in attendance. I cannot be positive, except that I did not deliver it to Mr. Charles Blood."

The endorsement on the certificate in suit designating Ira A. Blood as beneficiary, purports to be witnessed by one A. C. Sullivan, who, this witness deposes, is dead, and who brought it to the witness. Prior to

that cannot say he ever saw it. Charles C. Blood never mentioned it to him; would not say that Ira had not; has no present recollection of it.

The codicil to the will is witnessed by two physicians—one of them being the one heretofore referred to as testifying to the troubles between the members of the family while at San Diego, California, where Charles C. died. We will here remark, that reading the deposition of this physician, we cannot but regard his testimony with grave suspicion. His bias against plaintiff and for the interpleader, his apparently volunteer statements of matters that could only have come to his knowledge through his professional relations to the deceased, are so manifest, that we are compelled to say that it has destroyed all our confidence in him as a witness. By his own testimony he appears as a fomenter of strife.

The evidence of many witnesses who testified to their familiarity with the writing of Charles C. Blood, was to the effect that the signature purporting to be his to the change of the beneficiary was, to the best of their knowledge and belief, not his. His adopted daughter testified very positively that it was not his writing. Nearly as many testified in support of the genuineness of the signatures. The originals of several of the papers which were introduced, to which the signatures of Charles C. Blood are affixed, as well as the original of the certificate and its endorsements, have been sent up to us, but we will not undertake, as experts, to pass on the question of the genuineness of signatures, even in a case in equity when the determination of the evidence is before us. That Charles C. Blood, in the last few months of his life was in very great pain and suffering and seriously ill, is clear from the testimony, and that at times he was under the influence of narcotics and at times lost control of his mental faculties is in evidence. All the witnesses for interpleader who were with him in San Diego, however, testify that his mind was unim-

paired. He died very suddenly. As before observed, it will serve no useful purpose to set the evidence out in detail. The testimony taken in one case of this kind, is of very little service in guiding courts or counsel in the conduct of another case, and when that service cannot be accomplished, its narration is a mere loading of the records and of the reports.

At the conclusion of all the testimony in the case, counsel for plaintiff asked that specific questions be propounded to the jury which they should be required to answer. The court declining to give them, plaintiff and interpleader requested instructions to the jury, all of which the court declined to give. At the conclusion of the trial the jury brought in a verdict in this language: "We, the jury, find the issues in favor of plaintiff, Alice M. Blood, and against the interpleader, Ira A. Blood." The court received this verdict and the judgment of decree of the court, after reciting it, proceeds: "Which verdict and findings of the jury, the court doth here now adopt and doth find that C. C. Blood did not change the beneficiary under certificate of membership No. 4877, Mo., issued by Sovereign Camp, Woodmen of the World January 12, 1895, as alleged by interpleader; that the said C. C. Blood is dead, and that the plaintiff, Alice M. Blood, is entitled to the benefits of said certificate." The court therefore rendered judgment in favor of plaintiff for the $2000, and directed that that amount, which had been paid over to the clerk by the Sovereign Camp, be paid over to her. Motions for new trial and in arrest were filed, overruled, exceptions saved, an appeal prayed for, and the cause is here on that appeal.

REYNOLDS, P. J. (after stating the facts).— We have set out as well as we deemed necessary the testimony in the case and the proceedings in it. It will be observed that it was a vigorously fought contest and that every point that the ingenuity of counsel could suggest has been advanced by the learned and able counsel

for the interpleader. We are compelled, however, to hold that the position of the counsel is untenable. This was a proceeding in equity; beyond any controversy it was an interplea for a fund deposited in court, in which the interpleader asked affirmative relief. [Lincoln Trust Co. v. Nathan, 175 Mo. 32 l. c., 41 and 42; Shaffer v. Detie, 191 Mo. 377, l. c. 388.] This case also disposes of the necessity or propriety of any consideration of the ruling of the trial judge in refusing all instructions asked. See also Bank v. Nichols, 202 Mo. 309, l. c. 219. The issues of fact involved in it were to be tried by the court, but it was within the power of the court to take the verdict of the jury for his guidance, and it then was within his power, as it is within ours, to adopt or reject that verdict. [Waddington v. Lane, 202 Mo. 387, l. c., 416; Bick v. Williams, 181 Mo. 528, l. c. 529.] The learned member of the bar who tried this case, adopted as his finding that of the jury which he had caused to be empanelled and which, with him, heard all of the testimony in the case. That evidence, it must be admitted, is conflicting, but in a case of this kind, the onus was on the interpleader on every issue involved, and his counsel recognizing this, claimed and was granted the position of the party holding the affirmative. Has he sustained it? We think not. The testimony shows that the interpleader occupied a very close and confidential relationship to his brother in his last days. That brother was enfeebled in mind and body; he was in a condition in both these respects that rendered him peculiarly susceptible to the influence of another. The interpleader was constantly with him. Under the facts in evidence it is clear that in the brief period of his residence in California, Charles C. Blood changed the habits and affections and even ideas of a lifetime. He turned from his wife and adopted daughter to a comparative stranger, although a brother by blood, and not only practically committed his whole fortune and the well being of his wife and of his family to this brother, in the

guise of a trust that made the trustee absolute and responsible to no one, remainder and reversion in Ira and a brother and sister, but assigned to Ira, as it is claimed, the $2,000 evidenced in this certificate more than twelve years before, and had carried it through all these years for the benefit of plaintiff, who in his years of struggle and poverty stood by and was his faithful helpmate. This is the same person that he is now said to have referred to as "that woman," and whom it is now pretended he repudiated in his last days, after having lived with her and introduced her and treated her as a respected and beloved wife, certainly since 1883, as shown by the undisputed testimony of every witness in the case. He had not, so far as disclosed by the testimony, lived in his birthplace in Massachusetts, where this brother, who was the beneficiary had resided, for many years. There is no evidence in the case to show that even the ordinary brotherly relations had been kept up between them in the interval. Yet this brother and another one and a sister appear at his bedside in the last months of his existence and in a strange land, and at once an utterly new element interposes between this man and his wife and the daughter, and they are driven from his home and his heart and the substance which the wife had contributed to the collection of diverted from them into the hands of this comparative stranger. It would require strong evidence on the part of the person claiming property under such circumstances to establish that claim, and we do not think that it has been done in this case. Under such a state of facts, we cannot believe that the act of Charles C. Blood in changing the beneficiary in this certificate, was the act of a sane man—of a man in possession of his faculties and in normal mental condition. This change, under the facts in evidence, speaks for itself as against its being the act of a man in possession of his faculties and acting without outside and improper influences.

Referring to the very many points of objection

made by the learned counsel for the interpleader at the trial and in their brief, counsel have strangly misconceived the law, when they argue with great persistency that the execution of the assignment or change in the beneficiary by Charles C. Blood should have been denied under oath. Charles C. Blood was not the one who was denying the execution of it. The statute (Revised Statutes 1899, sec. 746), only requires the party charged with the execution of a document to deny its execution under oath. That was not this case. We are somewhat surprised that as learned counsel should have fallen into such an error. Furthermore the answer to the interpleader which the plaintiff interposed did not contain inconsistent averments, the proof of one of which disproved the other. They were properly plead in the alternative, as provided by section 626, Revised Statutes 1899, and as allowed by that statute. We see no error in the trial judge overruling the motion to elect. Even if the motion to elect lay, that motion being interposed when the case was called for trial and after the answer had been on file for some length of time, came too late, as has been decided in case after case. There was no error in excluding Ira A. Blood as a witness. He is disqualified for all purposes of this case by section 4652, Revised Statutes 1899. Upon the whole record we agree with the finding of the jury and of the trial judge, which, while not binding on us, is always persuasive. [Vogeler v. Punch, 205 Mo. 558.] And we find no reversible error in the rulings at the trial. In our opinion, the finding and decree of the lower court is sustained by the evidence, and is for the right party and it is accordingly affirmed. All concur.